## CARTER *v.* ILLINOIS.

No. 36. Argued November 15, 1946.—Decided December 9, 1946.

*Stephen A. Mitchell* argued the cause and filed a brief for petitioner.

*William C. Wines,* Assistant Attorney General of Illinois, argued the cause for respondent. With him on the brief was *George F. Barrett,* Attorney General.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

In 1928 petitioner pleaded guilty to an indictment for murder and was sentenced to imprisonment for 99 years. In 1945 he brought a petition for his release on writ of error in the Supreme Court of Illinois claiming that the conviction on which his confinement was based was vitiated by the denial of his right under the Fourteenth Amendment to the assistance of counsel. The Supreme Court of Illinois affirmed the original judgment of conviction. 391 Ill. 594, 63 N. E. 2d 763. In view of the importance of the claim, if valid, we brought the case here. 328 U. S. 827.

In a series of cases of which *Moore* v. *Dempsey,* 261 U. S. 86, was the first, and *Ashcraft* v. *Tennessee,* 327 U. S. 274, the latest, we have sustained an appeal to the Due Process Clause of the Fourteenth Amendment for a fair ascertainment of guilt or innocence. Inherent in the notion of fairness is ample opportunity to meet an accusation. Under pertinent circumstances, the opportunity is ample only when an accused has the assistance of counsel for his defense. And the need for such assistance may exist at every stage of the prosecution, from arraignment to sentencing. This does not, however, mean that the accused may not make his own defense; nor does it prevent him from acknowledging guilt when fully advised of all its implications and capable of understanding them. Neither the historic conception of Due Process nor the vitality it derives from progressive standards of justice denies a person the right to defend himself or to confess guilt. Under appropriate circumstances the Constitution requires that counsel be tendered; it does not require that under all cir-

cumstances counsel be forced upon a defendant. *United States ex rel. McCann* v. *Adams,* 320 U. S. 220.

The solicitude for securing justice thus embodied in the Due Process Clause is not satisfied by formal compliance or merely procedural regularity. It is not conclusive that the proceedings resulting in incarceration are unassailable on the face of the record. A State must give one whom it deprives of his freedom the opportunity to open an inquiry into the intrinsic fairness of a criminal process even though it appears proper on the surface. *Mooney* v. *Holohan,* 294 U. S. 103. Questions of fundamental justice protected by the Due Process Clause may be raised, to use lawyers' language, dehors the record.

But the Due Process Clause has never been perverted so as to force upon the forty-eight States a uniform code of criminal procedure. Except for the limited scope of the federal criminal code, the prosecution of crime is a matter for the individual States. The Constitution commands the States to assure fair judgment. Procedural details for securing fairness it leaves to the States. It is for them, therefore, to choose the methods and practices by which crime is brought to book, so long as they observe those ultimate dignities of man which the United States Constitution assures. *Brown* v. *New Jersey,* 175 U. S. 172, 175; *Missouri* v. *Lewis,* 101 U. S. 22, 31. Wide discretion must be left to the States for the manner of adjudicating a claim that a conviction is unconstitutional. States are free to devise their own systems of review in criminal cases. A State may decide whether to have direct appeals in such cases, and if so under what circumstances. *McKane* v. *Durston,* 153 U. S. 684, 687. In respecting the duty laid upon them by *Mooney* v. *Holohan,* States have a wide choice of remedies. A State may provide that the protection of rights granted by the Federal Constitution be sought through the writ of *habeas corpus* or *coram nobis.*

It may use each of these ancient writs in its common law scope, or it may put them to new uses; or it may afford remedy by a simple motion brought either in the court of original conviction or at the place of detention.   See, *e. g.,* *New York ex rel. Whitman* v. *Wilson,* 318 U. S. 688; *Matter of Lyons* v. *Goldstein,* 290 N. Y. 19, 25, 47 N. E. 2d 425; *Matter of Morhous* v. *N. Y. Supreme Court,* 293 N. Y. 131, 56 N. E. 2d 79; *People* v. *Gersewitz,* 294 N. Y. 163, 168, 61 N. E. 2d 427; *Matter of Hogan* v. *Court of General Sessions,* 296 N. Y. 1, 9, 68 N. E. 2d 849.   So long as the rights under the United States Constitution may be pursued, it is for a State and not for this Court to define the mode by which they may be vindicated.

An accused may have been denied the assistance of counsel under circumstances which constitute an infringement of the United States Constitution.   If the State affords no mode for redressing that wrong, he may come to the federal courts for relief.   But where a remedy is provided by the State, a defendant must first exhaust it in the manner in which the State prescribes.   *Ex parte Hawk,* 321 U. S. 114; *House* v. *Mayo,* 324 U. S. 42.   For the relation of the United States and the courts of the United States to the States and the courts of the States is a very delicate matter.   See *Ex parte Royall,* 117 U. S. 241, 251. When a defendant, as here, invokes a remedy provided by the State of Illinois, the decision of the local court must be judged on the basis of the scope of the remedy provided and what the court properly had before it in such a proceeding.   *Woods* v. *Nierstheimer,* 328 U. S. 211.   The only thing before the Illinois Supreme Court was what is known under Illinois practice as the common law record. That record, as certified in this case, included only the indictment, the judgment on plea of guilty, the minute entry bearing on sentence, and the sentence.   And so the very narrow question now before us is whether this common law record establishes that the defendant's sentence is

void because in the proceedings that led to it he was denied the assistance of counsel.

This case is quite different from a case like *Rice* v. *Olson,* 324 U. S. 786. In that case the record properly before this Court contained specific allegations bearing on the disabilities of the defendant to stand prosecution without the aid of counsel. There was not, as we have here, an unchallenged finding by the trial court that the accused was duly apprised of his rights and, in awareness of them, chose to plead guilty. The judgment against Carter explicitly states:

> "And the said defendant Harice Leroy Carter commonly known as Roy Carter having been duly arraigned and being called upon to plead expresses a desire to plead guilty to the crime of murder as charged in the indictment. Thereupon the Court fully explained to the Defendant Harice Leroy Carter commonly known as Roy Carter the consequence of such plea and of all his rights in the premises including the right to have a lawyer appointed by the Court to defend him and also of his right to a trial before a jury of twelve jurors sworn in open Court and of the degree of proof that would be required to justify a verdict of guilty against him under the plea of not guilty but the defendant Harice Leroy Carter commonly known as Roy Carter persists in his desire to plead guilty and for a plea says he is guilty in manner and form as charged in the indictment."

This, then, is not a case in which intelligent waiver of counsel is a tenuous inference from the mere fact of a plea of guilty. *Rice* v. *Olson, supra,* at 788. A fair reading of the judgment against Carter indicates a judicial attestation that the accused, with his rights fully explained to him, consciously chose to dispense with counsel. And there is nothing in the record to contradict the judicial

finding. From the common law record, we do not know what manner of man the defendant was. Facts bearing on his maturity or capacity of comprehension, or on the circumstances under which a plea of guilty was tendered and accepted, are wholly wanting. We have only the fact that the trial judge explained what the plea of guilty involved. To be sure, the record does not show that the trial court spelled out with laborious detail the various degrees of homicide under Illinois law and the various defenses open to one accused of murder. But the Constitution of the United States does not require of a judge that he recite with particularity that he performed his duty.

The only peg on which the defendant seeks to hang a claim that his right to counsel was denied is the fact that the judge did assign him counsel when it came to sentencing. From this fact alone, we are asked to draw the inference that the accused was not capable of understanding the proceedings which led to his plea of guilty, and was therefore deprived of the indispensable assistance of counsel. We cannot take such a jump in reasoning. A trial court may justifiably be convinced that a defendant knows what he is about when he pleads guilty and that he rightly believes that a trial is futile because a defense is wanting. But the imposition of sentence presents quite different considerations. There a judge usually moves within a large area of discretion and doubts. Such is the situation under Illinois law. The range of punishment which a judge in Illinois may impose for murder is between fourteen years and death. It is a commonplace that no more difficult task confronts judges than the determination of punishment not fixed by statute. Even the most self-assured judge may well want to bring to his aid every consideration that counsel for the accused can appropriately urge. In any event, the designation of counsel to assist the accused at the sentencing stage of the

prosecution in no wise implies that the defendant was not capable of intelligent self-protection when he pleaded guilty. Cf. *Canizio* v. *New York,* 327 U. S. 82.

We conclude that on the record before the Supreme Court of Illinois there was no showing that Carter's plea of guilty was made under circumstances which cut the ground from under the resulting sentence. In restricting its review to that record the Supreme Court of Illinois followed local practice, and the practice constitutes allowable State appellate procedure. Factors that might suggest fundamental unfairness in the proceedings before the trial judge—*e. g.*, the racial handicap of the defendant, his mental incapacity, his inability to make an intelligent choice, precipitancy in the acceptance of a plea of guilty— are not before us because they were not in the common law record which was all that was before the Supreme Court of Illinois. Whether the defendant is entitled to press such claims to show a denial by the State of Illinois of a constitutional right, it will be time enough to consider when that issue is properly before us after being presented in a proceeding in the State courts appropriate to that purpose, or, if none is available, in a federal court. *Woods* v. *Nierstheimer, supra; Ex parte Hawk, supra.*

After indicating the restricted scope of review in this proceeding, the court below observed that under Illinois law a defendant who desires counsel must ask for it and show that he cannot afford one of his own choice. There are situations when justice cannot be administered unless persons charged with crime are defended by capable and responsible counsel. But there is nothing in the record before us to indicate that the circumstances made it necessary for Carter to have professional guidance other than that given by the trial court. There is therefore nothing in the statement of the Illinois Supreme Court alone from which we can infer that these normal requirements of

Illinois law prejudiced this defendant or made their observance in this case incongruous with his constitutional rights.

*Judgment affirmed.*

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK and MR. JUSTICE RUTLEDGE concur, dissenting.

If, as the opinion of the Court suggests, the Illinois Supreme Court had ruled that petitioner could not raise the question of his right to counsel by reason of the abbreviated common law record, I would agree that the judgment should be affirmed. For then petitioner would be remitted to other state procedures for vindication of his constitutional right. The Illinois Supreme Court rested on that ground when it refused to consider his claim that he was deprived of due process of law by reason of the method of his arrest and the unfairness of the trial. But when it came to consider the question of his right to counsel, the inadequacy of the record was not the ground it gave for barring him from showing that he was unqualified to waive the constitutional right:

"His first contention is that the court erred in not appointing an attorney to represent him during arraignment. The right to be represented by counsel is one which the defendant may waive or claim, as he shall determine. No duty rests upon the court to provide legal assistance for an accused, unless he states, under his oath, his inability to procure counsel, and expresses a desire to have the court appoint one for him. (*People* v. *Braner*, 389 Ill. 190; *People* v. *Corrie*, 387 Ill. 587; *People* v. *Childers*, 386 Ill. 312.) There being no bill of exceptions, and it not appearing that plaintiff in error sought to have an attorney appointed for him, this assignment of error cannot

be sustained. *People* v. *Stubblefield, post,* p. 609; *People* v. *Stack, ante,* p. 15; *People* v. *Braner,* 389 Ill. 190." 391 Ill. 594, 595; 63 N. E. 2d 763, 764.

By the rule there announced the record was inadequate only in one respect—the absence of a bill of exceptions showing that petitioner asked that an attorney be appointed for him. But that neglect by a defendant is not fatal, at least in a capital case. If a defendant is not capable of making his own defense, it is the duty of the court to appoint counsel, whether requested so to do or not. *Williams* v. *Kaiser,* 323 U. S. 471, 476. As we stated in that case, pp. 475–476:

> "The decision to plead guilty is a decision to allow a judgment of conviction to be entered without a hearing—a decision which is irrevocable and which forecloses any possibility of establishing innocence. If we assume that petitioner committed a crime, we cannot know the degree of prejudice which the denial of counsel caused. See *Glasser* v. *United States,* 315 U. S. 60, 75–76. Only counsel could discern from the facts whether a plea of not guilty to the offense charged or a plea of guilty to a lesser offense would be appropriate. A layman is usually no match for the skilled prosecutor whom he confronts in the court room. He needs the aid of counsel lest he be the victim of overzealous prosecutors, of the law's complexity, or of his own ignorance or bewilderment."

Therefore the least which we should do is to vacate this judgment and remand the case to the Illinois Supreme Court. For as MR. JUSTICE MURPHY points out, there is ample evidence in the record, certified to us from that court, to support petitioner's claim that he was not capable of making his defense. If that evidence may be considered in this proceeding, petitioner should prevail. Though

the basis of the action of the Illinois Supreme Court be deemed less clear than I have indicated, a remand to it would be appropriate so that any state procedural question may be untangled from the question arising under the Federal Constitution. See *State Tax Commission* v. *Van Cott,* 306 U. S. 511.

Mr. Justice Murphy, dissenting.

The admitted facts of this case plainly reveal that the petitioner has not been convicted of murder and sentenced to 99 years in prison in accordance with due process of law. Rather he has been deprived of his freedom for life without the aid of an attorney to guide him along the complicated and twisting labyrinths of the law. And there is no affirmative indication that he intelligently waived his right to counsel or that he understood the intricate legal problems involved in his indictment and conviction. Due process cannot thrive in the absence of such evidence.

There is an initial problem as to what evidence is before this Court at this time. It is said that we are limited to the common law record before the Supreme Court of Illinois, a record that includes only the indictment, the judgment on the plea of guilty, the minute entry bearing on the sentence, and the sentence itself. We are asked to close our eyes to a transcript of testimony in connection with a hearing on mitigation of the offense. This testimony was taken after the conviction. It has been certified, presumably by the stenographer recording the testimony at the hearing, and notarized. It appears in the printed record before this Court. We are also asked to overlook certain information about the petitioner given to the Illinois State Penitentiary by the State's attorney and concurred in by the presiding judge. The State of Illinois does not deny any of these facts; it merely requests that we disregard them as did the Supreme Court of Illinois, that we blind ourselves to what is printed in the record before us.

Legal technicalities doubtless afford justification for our pretense of ignoring plain facts before us, facts upon which a man's very life or liberty conceivably could depend. Moreover, there probably is legal warrant for our not remanding the case to the Supreme Court of Illinois to allow those facts to be incorporated in the formal record before it and to reconsider its decision in light thereof. But the result certainly does not enhance the high traditions. of the judicial process.

In my view, when undisputed facts appear in the record before us in a case involving a man's life or liberty, they should not be ignored if justice demands their use. Here the facts in question fortunately are not crucial, since the bare common law record alone reveals a lack of due process. But the additional facts do serve to emphasize the absence of an intelligent waiver of counsel and petitioner's failure to comprehend the legal problems placed in his path. They serve to make any decision on the issue in the case more intelligent and more just. The discussion that follows, therefore, is based on all the certified facts in the record before us.

Petitioner, a Negro, was 30 years of age at the time of the relevant events in 1928. He had no schooling, although he was able to read and write. He was of average mentality and had never before run afoul of the law. During the preceding eleven years he had worked as a cook and a mechanic. By reputation he was quiet and industrious.

While driving a car back from a fishing trip, petitioner became involved in a bitter and prolonged dispute with the driver of a horse-drawn gravel wagon over the right-of-way on a road. This driver, a white man, refused to give petitioner enough room to pass. A violent argument in racial terminology ensued; rocks and gravel were thrown at petitioner's car. Eventually, when the dispute was renewed after a short interval, the driver got off his

wagon and advanced toward petitioner's car. Petitioner claimed that he thought the driver was reaching into his shirt for a gun. Petitioner got out of his car and fired three times, killing the driver.

Petitioner was taken into custody that same evening and was questioned far into the night. He was taken to an adjoining town, allegedly to avoid mob violence. Twelve days later, on June 12, 1928, he was indicted. It was charged that he "did then and there unlawfully and feloniously, with malice aforethought, by shooting, kill" the named individual. On June 15 he was arraigned without the benefit of counsel, it being alleged by petitioner that he was held incommunicado from the time of his arrest. He was handed a copy of the five-page indictment, under which he could have been convicted of first-degree murder, lesser degrees of homicide, voluntary or involuntary manslaughter, assault with a deadly weapon, or lesser degrees of assault. Various considerations of defense, including self-defense, were accordingly raised. Upon being asked how he pleaded, he expressed a desire to plead guilty as charged in the indictment. The trial court's order, which bears striking resemblance to the Illinois statute on the subject (Ill. Rev. Stat., 1945, Ch. 38, par. 732), recited that the judge "fully explained" to petitioner "the consequence of such plea" and his rights to counsel and to jury trial, but that petitioner "persists in his desire to plead guilty" as charged. There is no affirmative evidence that petitioner understood the necessary consequences of his plea or that, fully appreciating all of his legal rights, he intelligently waived his rights to counsel or to jury trial. All that appears is that he "persisted" in his desire to plead guilty and that the court convicted him of murder, the statutory punishment for which was death by electrocution or imprisonment for any period from fourteen years to life.

A further hearing was held on the same day and an attorney was appointed, apparently not at petitioner's request, to represent petitioner at a hearing upon the "question of mitigation or aggravation of said crime of murder to which said defendant has pleaded guilty." Such a hearing was required by state law (Ill. Rev. Stat., 1945, Ch. 38, par. 732) where a guilty plea has been entered and where the court has discretion as to the extent of the punishment. A hearing on this matter was held three days later, on June 18, petitioner's appointed counsel being present. On June 29, in the absence of counsel, petitioner appeared in court and was sentenced to serve 99 years in prison.

I do not believe that these facts add up to due process of law. Petitioner, an uneducated, bewildered layman, was allegedly held incommunicado for fifteen days and was then called upon to make a vital decision upon the basis of his unintelligent understanding of the indictment—a legalistic, verbose document of five pages which would doubtless mean many things to many learned lawyers in light of the particular facts involved. Petitioner's very life and liberty depended upon his ability to comprehend the variety of crimes covered by the indictment and which one, if any, applied to the facts of his case. He was compelled to weigh the factors involved in a guilty plea against those resulting from the submission of his case to a jury. He was forced to judge the chances of setting up a successful defense. These are all complicated matters that only a man versed in the legal lore could hope to comprehend and to decide intelligently. Petitioner obviously was not of that type. Yet at this crucial juncture petitioner lacked the aid and guidance of such a person. In my view, it is a gross miscarriage of justice to condemn a man to death or to life imprisonment in such a manner. See *Powell* v. *Alabama,* 287 U. S. 45; *Williams* v. *Kaiser,* 323 U. S. 471; *Rice* v. *Olson,* 324 U. S. 786.

It is said, of course, that petitioner waived his right to counsel. My answer is that such action is immaterial in a capital case of this nature without affirmative evidence of an intelligent waiver. Such evidence is non-existent here, even looking solely at the common law record. Its absence becomes even more emphasized when we view the background of ignorance, racial antagonism and threats of mob violence. When the life of a man hangs in the balance, we should insist upon the fullest measure of due process. Society is here attempting to take away the life or liberty of one of its members. That attempt must be tested by the highest standards of justice and fairness that we know. It is no excuse that the individual is willing to forego certain basic rights, unless we are certain that he has a full and intelligent comprehension of what he is doing. Otherwise we take from due process of law a substantial part of its content.

Nor is it significant that counsel was appointed for petitioner to represent him at the hearing as to the mitigation of the offense. The error was done, the damage was committed, when petitioner was arraigned, compelled to plead and convicted without the assistance of counsel. The special hearing on mitigation held thereafter, for which counsel was provided, afforded no opportunity for undoing the effect of the unaided arraignment or plea of guilty. Cf. *Canizio* v. *New York,* 327 U. S. 82. The failure to have counsel in regard to those matters permeated the entire proceeding, with indelible effects that could not be removed at the special hearing. Due process of law still was lacking.

Insistence upon counsel at all stages of a capital case, where an intelligent waiver is lacking, imposes no intolerable burden upon the law enforcement process. It is merely a recognition of our attempt to be civilized, a recognition that the process of condemning human life is to be

judged by standards higher than those applied to a prosecution for violation of a minor ordinance or regulation.

I would therefore reverse the judgment below.