**SCOTT v. JOHNSTON, Warden.**

No. 26344–S.

District Court, N. D. California, S. D.
April 1, 1947.

George V. 'Curtis, of San Francisco, Cal., for petitioner Scott.

Frank J. Hennessy, U.S. Atty., and Joseph Karesh, Asst. U. S. Atty., both of San Francisco, Cal., for respondent.

HARRIS, District Judge.

The petitioner, James Moore Scott, confined in Alcatraz Penitentiary, has filed a petition for writ of habeas corpus herein and, after the lapse of approximately nine years, attack is now made upon the judgment and sentence imposed by the United States District Court, Eastern District of Arkansas, Northern Division, for the violation of Title 18 U.S.C.A. § 320. The indictment, framed in two counts, charged Thedora Hutson and petitioner with the armed robbery of a post office, the assault of the Postmaster, and the theft of postal funds.

A rule to show cause issued based upon said petition and a return made thereto; traverse thereafter was filed by petitioner to the writ, an issue of fact having been created Hon. A. F. St. Sure issued the writ. Petitioner was produced before the Court, and counsel was appointed to represent him. After partial hearing of the matter by Judge St. Sure it was stipulated that this Court hear and finally determine the cause.

The several grounds urged are: (1) Petitioner was sentenced to a term of twenty-five years imprisonment for armed post office robbery without entry of a plea; (2) He was deprived of his Constitutional right of assistance of counsel, as contemplated by the Supreme Court of the United States in Johnston v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed 1461.

The pattern of petitioner's criminal career is reflected in his testimony: His first conviction occurred in 1927 for stealing a calf; he entered a plea of guilty and served two years in McAlester, Oklahoma. Thereafter, in 1930, he was convicted of burglary, after entering a plea of guilty, and served a seven year sentence in

an Oklahoma Penitentiary. He was represented by counsel at the time of trial. During his term in the penitentiary he escaped, but after a period of eight months he was apprehended and finished his term.

In 1934 he was convicted in Missouri for carrying concealed weapons. During the course of the trial, and while represented by counsel, he changed his plea to guilty. He served two years on this latter charge.

The next encounter with the law was his arrest at Newport, Arkansas, on the 4th day of July, 1937, which resulted in the judgment and sentence now under attack.

■ Petitioner's first contention that he was sentenced without the entry of a plea is not substantiated by the record, and the evidence which he offered is not worthy of belief. This Court, in weighing the testimony, has the right to consider the petitioner's ripe experience in criminal matters, together with his credibility as a witness. Alexander v. Johnston, 9 Cir., 137 F.2d 712, 713; O'Keith v. Johnston, 9 Cir., 129 F.2d 889, 891.

It is to be noted that the judgment, sentence and warrant of commitment (Respondent's Exhibit B) states in pertinent part:

" * * * and comes the defendant to the bar of the court in the custody of the Marshal and being advised concerning the nature of the indictment against him herein and being demanded how he will acquit himself thereof saith that he cannot deny but that he is guilty as charged and puts himself upon the mercy of the court."

Respondent relies on the written record that the petitioner entered a plea of guilty,

as against the unsupported allegation of the petitioner, a convicted felon, that no plea whatsover was entered. In Bennett v. Hunter, 10 Cir., 155 F.2d 223, 225, it was said:

"In the absence of a showing of fraud, a judgment imports verity and its recitals may not be challenged in a collateral proceeding by parol testimony. Thomas v. Hunter, 10 Cir., 153 F.2d 834."

To the same effect, Cochran v. State of Kansas, 316 U.S. 255, 256, 62 S.Ct. 1068, 86 L.Ed 1453; Riddle v. Dyche, 262 U.S. 333, 43 S.Ct. 555, 556, 67 L.Ed 1009.

Apart from the foregoing recitals in the judgment, it appears from the testimony of Postal Inspector White, called by respondent, that petitioner upon his arrest, although declining to make a written statement, never denied active participation in the robbery. In effect, he admitted his guilt, and participation with Hutson, a youth of the age of twenty-one with no prior criminal record, who implicated petitioner as the prime actor in the perpetration of the felony, as it appears in a confession obtained by White. Although White could not recall all of the details surrounding the court proceedings, having participated in many cases during the intervening years, it is manifest that his recollection was sufficiently clear with respect to the entry of the plea of guilty by petitioner. Scott's testimony that both he and Hutson were sentenced by the trial court without entering a plea[1] is patently incredible, and in direct conflict with the testimony of Attorney Wiley Smith.[2]

■ The written record alluded to must, therefore, prevail as against the unsup-

---

[1] Transcript, pp. 12, 26, 27, 28.

P. 26—Q. When you stood before the court on these proceedings you knew, you had been informed what you had been charged with? A. Yes, sir.

Q. You knew why you were there? A. Yes, sir.

Q. Did the court or the clerk ask you how you wanted to plead? A. No, sir.

Q. He just sentenced you? A. That is correct.

P. 27—Q. You mean a lawyer was in the court with his client, Mr. Hutson, and he asked for probation for his client without ever having his client enter a plea? A. That is correct.

Q. And that was the first time Hutson had been before the judge, as you had been before the judge? A. That was the first time I had ever been before the judge. If I had been before the judge, I didn't know anything about it.

Q. Nobody asked you how you wanted to plead? A. That is correct.

[2] Transcript—p. 46. It should be noted that Wiley Smith, counsel for co-defendant Hutson, who also pled guilty in the postal robbery case, had previously served as an attorney for Scott during one of petitioner's earlier criminal trials.

ported testimony of petitioner seeking to attack its verity, and accordingly this Court finds that Scott did, on the 13th day of December, 1937, enter a plea of guilty.[3]

The second ground urged by petitioner that he was deprived of assistance of counsel is equally without merit. The respondent offered, and there were received in evidence, affidavits sworn to by the Hon. Thomas C. Trimble, Jr., who presided at the time the petitioner appeared in court for trial, as well as an affidavit of Charles S. Harley, secretary and court reporter for the Judge. Both Judge Trimble and the Court reporter, although admitting no personal recollection of the particular arraignment, plea and sentence of the petitioner Scott, alleged that it was the invariable custom of the Court to ask each defendant at the outset of a case if he had a lawyer. If he had not, the Court then asked him if he desired to have the Court appoint a lawyer for him. Furthermore, and as an additional safeguard for a defendant, the Court invariably appointed a lawyer to advise defendant, whether he requested such appointment or not, in all cases in which a defendant appeared doubtful as to his rights or his understanding of court procedure. On arraignment day it was, and is the custom of the Court to have lawyers available to assist in defending the impecunious and poorly educated defendant or to explain Constitutional rights to him. Thus it would appear from the assertions made in these affidavits that petitioner was given the opportunity of having counsel represent him.

■ The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case upon the particular facts and circumstances surrounding the case, including the background, experience and conduct of the accused, and on this hearing petitioner has the burden of sustaining his allegations by a preponderance of the evidence.

■ At the time of the instant judgment and sentence it appears that no provision was made for official court reporters, and that a formal transcript of the proceedings is not available. Under the circumstances the customary procedure invoked by the trial judge, and confirmed by the court reporter, must be given due consideration in weighing the evidence in the light of all of the surrounding circumstances in determining whether or not petitioner has discharged the burden of proof that he did not competently and intelligently waive his Constitutional right of assistance of counsel.[4]

In the well considered case of Dorsey v. Gill, App.D.C., 148 F.2d 857, 874, the Court used this appropriate language:

"The dangerous possibilities of a too-liberal use of the writ for review purposes are emphasized by the fact that—unlike most of the state courts—no provision is made for official court reporters in federal trial courts and few transcripts are available. If the presumptions of regularity of proceedings were permitted to be lightly upset by irresponsible allegations, the judges, to whom petitions for writs of habeas corpus are presented, would be forced to look back of and beyond records, into unreported proceedings, conducted by other judges, with witnesses, lawyers and other court officers long since dead or scattered. The problem would be intensified, also, by the fact that a large percentage of commitments are based upon pleas of guilty. A premium would be placed upon deception if an accused person could plead guilty; wait until the case had become 'cold' and then, by challenging jurisdiction or alleging deprivation of constitutional right, secure a reopening and new trial of his case. If greater safeguards are needed in original proceedings, they should be provided. But it will not solve any problem, which may exist there, to permit large-scale use of this extraordinary writ for review purposes. Instead, it

---

3 Respondent's Exhibits A and B, representing the docket entries and judgment and commitment.

4 Harpin v. Johnston, 9 Cir., 109 F.2d 434, 435; Franzeen v. Johnston, 9 Cir., 111 F.2d 817, 819; Lewis v. Johnston, 9 Cir., 112 F.2d 451; Cooke v. Swope,

D.C., 28 F.Supp 492, 493; affirmed 9 Cir., 109 F.2d 955; De Jordan v. Hunter, 10 Cir., 145 F.2d 287, 288; Towne v. Hudspeth, 10 Cir., 108 F.2d 676, 677; Moore v. Hudspeth, 10 Cir., 110 F.2d 386, 388.

would cause confusion worse confounded. It would be fantastic, so to interpret the Supreme Court's decisions as to permit and invite such a wholesale retrial of thousands of cases which have been regularly disposed of during the normal course of trial court proceedings. Obviously the Supreme Court intended no such result."

█ It is recognized that under appropriate circumstances the Constitution requires that counsel be tendered; it does not require that under all circumstances counsel be forced upon a defendant. Carter v. People of State of Illinois, 67 S.Ct. 216, 91 L.Ed. ——.

It appears, therefore, from the evidence, and the Court finds, based upon the affidavits of the trial judge and the court reporter, that an offer of counsel was made to petitioner when he appeared in the proceedings, and that such offer was not accepted.

The question follows whether the petitioner made an intelligent waiver of his right to be so represented by counsel when he entered his plea of guilty and held himself ready for sentence. Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830. As it appears from the record, Scott was no tyro in the field of crime, and it was not his first experience before the courts in Arkansas and Missouri. He was not unfamiliar with the court procedure, and not unacquainted with his fundamental Constitutional rights. This case, then, is not one wherein an intelligent waiver of counsel is a tenuous inference from the mere fact of a plea of guilty. Carter v. People of State of Illinois, supra.

█ A fair reading and analysis of the record in the light of the affidavits of the trial judge, court reporter and testimony of Inspector White, reflect that petitioner exercised an intelligent waiver of his right to counsel at the time he entered his plea.

In O'Keith v. Johnston, supra, the Court said in part: (129 F.2d at page 891)

"Appellant has been convicted of other felonies and his credibility is thus impeached and his testimony should be rejected unless, notwithstanding the base character of the witness, the court finds him entitled to belief. The acceptance of contrary evidence from credible witnesses appearing before that court is binding upon us. Federal Rules of Civil Procedure, rules 52(a), 81(a) (2), 28 U.S.C.A. following section 723c; Kelly v. Johnston, 9 Cir., 128 F.2d 793, decided by this court June 8, 1942."

Therefore, this Court Finds: 1. That petitioner did, on the 13th day of December, 1937, freely and voluntarily, enter a plea of guilty to the charges set forth in the indictment. 2. That petitioner was not denied his right to counsel, but intelligently and competently waived the same, and was not denied due process of law.

The writ of habeas corpus heretofore issued will be, and the same is hereby discharged, and the petition dismissed.