(No. 30820.—

HARICE LEROY CARTER, Appellant, *vs.* THE PEOPLE OF THE STATE OF ILLINOIS, Appellee.

*Opinion filed September 22, 1949.*

BISHOP, MITCHELL & BURDETT, (STEPHEN A. MITCH-
ELL, WILLIAM I. CONWAY, and PETER J. BRENNAN, JR.,
of counsel,) all of Chicago, for appellant.

GEORGE F. BARRETT, Attorney General, of Springfield,
(WILLIAM C. WINES, of Chicago, of counsel,) for the
People.

Mr. JUSTICE FULTON delivered the opinion of the court:

Plaintiff filed a motion in the nature of a writ of error
*coram nobis,* or, in the alternative, a petition for writ of
*habeas corpus,* in the circuit court of Livingston County,
seeking a reversal of a judgment of conviction for murder
and sentence to 99 years imprisonment imposed by that
court in 1928.

Appellant previously prosecuted a writ of error in this
court on the common-law record only, there being no bill
of exceptions. On that record this court affirmed the judg-
ment of conviction and sentence. (*People v. Carter,* 391
Ill. 594.) *Certiorari* was granted to the Supreme Court
of the United States, and the decision of this court there
affirmed. 329 U. S. 173.

The record filed in the present case includes the tran-
script of the evidence presented at the hearing in May,
1948, in the *coram nobis* proceeding and also the transcript
of the testimony at the hearing in the original criminal
case on June 18, 1928, on the question of mitigation or
aggravation of sentence, attached to the motion as ex-
hibit "A."

On this appeal it is the evident intention of appellant
to place before the court all of the facts and circumstances
surrounding the trial in the circuit court of Livingston
County, in support of his contention that he was deprived

of due process of law under the fourteenth amendment of the Federal constitution. It is conceded by the People that this motion is the appropriate proceeding to raise the questions involved in this case and that it discloses circumstances to toll the Statute of Limitations.

This is a capital case and it is urged by appellant that he was deprived of due process of law (1) because he was induced to plead guilty by reason of duress and misrepresentations by the law officers, (2) by reason of the failure of the trial court to appoint counsel to represent him before the arraignment and plea, and (3) because of the absence of any intelligent, competent waiver on the part of the appellant of his constitutional right to counsel.

The answer of the People denied the averments of appellant as to lack of education, knowledge and understanding of the charge against him, as to failure to waive his right to counsel, and as to any coercion into making any plea of guilty or waiver of any right. The answer further alleges that appellant did not require counsel except for the hearing on mitigation or aggravation and that the counsel appointed for him on that hearing fully advised and counseled appellant as to all of his rights and fully represented him as to his right to withdraw his plea of guilty.

On the hearing, full and complete testimony was taken, and after argument the circuit court entered an order finding that appellant had failed to sustain the allegations of his petition; that he was accorded all of his constitutional rights and that he was not denied due process of law under the fourteenth amendment of the Federal constitution. Also, that he did knowingly, intelligently and voluntarily waive whatever rights are accorded to him thereunder.

The important facts shown in the exhibits attached to the motion, and in the transcript of testimony, show that on the evening of May 31, 1928, the appellant, a negro, 30 years of age, with a limited education, while driving

back from a fishing trip to Fairbury, accompanied by four women and a boy, all colored, became involved in a violent dispute, over the right of way on a public road, with the driver of a horse-drawn gravel wagon. The driver and a companion hauler of gravel were travelling on the left side of the road, which was the only well-beaten path on the highway, and appellant quarrelled and disputed their right to hold the wrong side of the road. The appellant, his lady companions, and the drivers, both white, engaged in violent name calling, consisting of obscene, profane and vile epithets, together with racial insults. Appellant finally drove around the gravel wagons and proceeded on to Fairbury. In the neighborhood of half an hour, appellant and one female companion returned and renewed the quarrel. One driver, James Churchill, got down off his wagon and, at about the same moment, appellant slipped out of his seat in the automobile, drew a revolver and shot and killed Churchill instantly. Later in the evening appellant was apprehended, arrested and taken first to Fairbury and then to the county jail at Pontiac. A rumor of mob violence arose and appellant was removed by the sheriff. from the county jail at Pontiac to the jail at Bloomington. He was returned to the county jail at Pontiac on June 4, 1928. On June 12, 1928, he was indicted in the circuit court of Livingston County for the murder of Churchill and three days later on June 15 was arraigned, no counsel appearing for him, and pleaded guilty to the murder, which plea was entered of record on that date. A hearing on mitigation or aggravation of the offense was heard by the court on June 18. Prior to that hearing the court appointed L. W. Tuesberg, a reputable attorney, to represent the defendant on the question of mitigation or aggravation of the said offense. Considerable testimony was taken at that hearing and attorney Tuesberg examined and cross-examined all witnesses at length in behalf of appellant; whereupon the

court took the matter of mitigation or aggravation of the offense under advisement.

On June 29, 1928, the circuit court sentenced the appellant to the Illinois State Penitentiary for a term of 99 years.

The present motion was filed in the circuit court of Livingston County on March 12, 1948.

Appellant emphasizes the following facts in support of his position that he was not properly represented by counsel and that he did not intelligently waive· such right. That during all the time after his arrest on May 31, 1928, until after his plea of guilty on June 15, 1928, he was held *incommunicado;* that the only information or assistance rendered him came from the law-enforcing officers; that in a conversation with the State's Attorney he was told he could plead guilty and take a long prison term, or plead not guilty and get the electric chair. This last statement was denied by the State's Attorney. Further, that he was ignorant, uneducated and unable to understand anything about his right to counsel or other constitutional rights; that the threat of mob violence, and the feeling and hysteria aroused in the community against him and other negroes bewildered and confused him; that the five-page indictment served on him at the time he was called upon to plead was entirely unintelligible to him; that the court erred in not giving him the right to advice of counsel before making his plea; and that he was denied due process of law in not being represented at every stage of his case by capable and responsible counsel.

In the hearing on this petition in the nature of a writ of error *coram nobis,* the facts surrounding the arrest and conviction of plaintiff, Carter, appear to have been fully presented to and considered by the circuit court of Livingston County. We have repeatedly stated that such a petition "lies to set aside a conviction obtained by duress or fraud, or where, by some excusable mistake or ignorance

of the accused and without negligence on his part, he has been deprived of a defense which he could have used on his trial, and which, if known to the court, would have prevented conviction." *People* v. *Touhy*, 397 Ill. 19; *People* v. *Crooks*, 326 Ill. 266.

We do not find in the record any affirmative proof that plaintiff was held *incommunicado* from the time of his arrest until he was sentenced. It is true he was carefully guarded by the sheriff and his deputies but there is no testimony that any of his friends were denied the right to see him in the jail during that period and no proof that he asked to see any person or friend and that such request was denied. Neither is there any evidence of fraud, duress or coercion on the part of the law-enforcing officers.

The assertion that he was bewildered and confused by the threat of mob violence is unduly emphasized because, within a very few days after the shooting occurred, the hysteria appears to have subsided so far as the knowledge of the plaintiff was concerned.

The most important question to be determined is whether, from the facts introduced at the hearing, Carter understandingly and intelligently waived the right to the appointment of counsel at the time a plea of guilty was accepted and entered by the court.

At the time of his arraignment, the court, before entering the plea of guilty, very carefully explained to plaintiff the charge of murder in the indictment. He asked Carter four or five times as to whether or not he wanted an attorney appointed to represent him, and informed appellant that if he did not have funds or financial ability to employ an attorney, the court would appoint one for him. The court further explained to plaintiff the consequences of a plea of guilty and that the punishment might be the death penalty or imprisonment in the penitentiary for any term of years not less than fourteen. Plaintiff was then instructed as to his right to a trial by jury, but at all times

persisted in pleading guilty, and at all times he told the court he did not want an attorney. His conduct, with his anxiety to plead guilty, does not indicate any ignorance or lack of education insofar as an understanding of his position was concerned. Rather it quite convincingly shows that he knew he had committed a grave crime and decided it would be wiser to plead guilty and throw himself upon the mercy of the court, hoping that he would not thereby receive the extreme penalty. Under the statutes of the State of Illinois in force in the year 1928, and under the established practice as it existed at that time, there was no further duty imposed upon the court to appoint counsel for appellant.

Without discussing the details further, we feel that the plaintiff's rights were clearly and fully explained to him and that he knowingly and voluntarily chose to dispense with counsel.

We have read with care and respect the repeated announcements of the Supreme Court of the United States that the due-process clause of the Federal constitution is not satisfied by formal compliance with procedural regularity, (*Mooney* v. *Holohan,* 294 U. S. 103; *Marino* v. *Ragen,* 332 U. S. 561; *Carter* v. *Illinois,* 329 U. S. 173,) but cannot find any fundamental unfairness to plaintiff in the record of this case. We further appreciate what the Supreme Court has said in many cases about the protection to be afforded defendants in criminal cases by the appointment of counsel, but we believe the facts and the situation here are readily distinguished from many of those cases. (*Tompkins* v. *Missouri,* 323 U. S. 485; *Powell* v. *Alabama,* 287 U. S. 45; *Williams* v. *Kaiser,* 323 U. S. 471.) It is the earnest and sincere desire of this court to follow the established policy of both the State and Federal governments on affording to all criminals due process of law and to avoid the slightest possible friction over practice and procedure. However, as we read the record in

this case, none of the fundamental constitutional rights of the appellant have been violated.

Two trial judges, one who presided at the time of arraignment and plea of guilty, and one who, twenty years later, decided the issues in this case, after careful investigation, found that the appellant, with his rights fully explained to him, knowingly decided he did not desire counsel. We believe their findings and the judgment in the *coram nobis* proceeding to be fully supported by the testimony and the facts in this case, and that judgment is affirmed.

*Judgment affirmed.*