**UNITED STATES v. DE JORDAN.**

Cr. No. 4515.

United States District Court
D. Minnesota, Fifth Division.

Nov. 10, 1949.

------♦------

Clarence U. Landrum, United States Attorney, James J. Giblin, Assistant United States Attorney, St. Paul, Minnesota, for plaintiff.

William C. Meier, St. Paul, Minnesota, for defendant petitioner.

DONOVAN, District Judge.

Petitioner, an Indian, without benefit of counsel pleaded guilty to the crime of murder in the second degree of one Josephine Smith Munnell. On this plea he was sentenced for life, beginning May 31, 1932.

Petitioner has moved for the vacation of the sentence imposed on him by the Court on the grounds that (1) the Court lacked jurisdiction, and (2) that petitioner was denied the benefit of counsel provided for by the Sixth Amendment to the Constitution of the United States.

The present motion is based upon Section 2255 of Title 28, U.S.C.A., Revised.[1]

The record made in two previous hearings on petitions for habeas corpus in the United States District Court for the District of Kansas, First Division, is before the Court in the present case. Briefly, the facts disclose that petitioner was indicted on May 20, 1932, for the killing of an Indian woman on March 16, 1932. The details disclose the killing to have been an unusually brutal one. For present purposes it will suffice to point out that petitioner testified to the effect that prior to a plea of guilty in this Court at Duluth, Minnesota, on May 31, 1932, George A. Heisey, Assistant United States Attorney for the District of Minnesota, visited him in the jail at Duluth; that Heisey asked him whether he had an attorney and petitioner replied, saying he had no funds; that Heisey then told him "it would be all right", that the charge against him having been committed on an Indian Reservation, petitioner, being an Indian, would be entitled to be defended by the United States District Attorney; that thereupon Heisey then said, "I am your attorney." Petitioner goes on to testify that he was then taken before the Honorable William A. Cant, where he pleaded guilty to a charge of second degree murder.

In addition to the foregoing, petitioner also testified that following his arrest and confinement in the County Jail at Cass Lake, Minnesota, he was tortured and beaten by the Sheriff and an assistant. He admits that he was visited by a physician following the foregoing claimed mistreatment, but that he did not disclose anything suggesting torture, nor show any evidence thereof to

---

1. "Federal custody; remedies on motion attacking sentence. A prisoner in custody under sentence of a court of the United States claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A motion for such relief may be made at any time.

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

"A court may entertain and determine such motion without requiring the production of the prisoner at the hearing.

"The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner."

the physician. His explanation for his failure to disclose evidence of such torture was that he was "scared". Depositions could not be obtained from the Sheriff and his assistant for the reason that they were dead.

2. "I went to Duluth from St. Paul, Minnesota. My recollection is that on the second day that I was in Duluth, in the early morning, I received a telephone call from someone, or from this defendant, who is [now] the petitioner in this habeas corpus proceeding, that he wanted an interview with me at the St. Louis County Jail, where he was confined. My memory is that I went to the jail pursuant to that call, and that it was some time between 9 and 10 o'clock in the morning that I saw DeJordan in the visitors' room, on the first floor of the St. Louis County Jail, in Duluth, Minnesota. And my recollection is that at that time there were at least four people present other than myself. As to who they were I have forgotten. My recollection is that there was one woman, and possibly two women in the room at that time. As to whether they were relatives of this petitioner, I do not recall.

"This petitioner at that time advised me that he desired to enter a plea of guilty to the charge that had been preferred against him by the indictment. I told him that the indictment charged first degree murder, and that the Court would not accept his plea of guilty to a first degree murder charge, because the Court had theretofore indicated to me that his construction of the Federal statute relating to murder and the penalty therefor, prohibited the Court from accepting any such plea; that it was the Court's view that it was solely within the province of the jury, upon a trial of any first degree murder, to find the defendant guilty of such a charge. Incidentally, I recall that I had in mind that it was this petitioner's claim that at the time of the commission of this crime he was under the influence of liquor, and that his victim had in her possession some white powder. This claim on his part, of his victim having white powder, which he had sampled, was of particular interest to me, for the reason that I and other Federal law enforcement authorities were anxious to determine, if they could, whether any narcotic drugs were being smuggled into the Indian reservation in Minnesota. I recall interrogating Charles Fisher, alias Charles DeJordan, about the liquor, and particularly about the white powder. And he assured me, in substance and in

Mr. George A. Heisey, an able attorney of splendid reputation, was practicing his profession in Minneapolis when his deposition was taken. Petitioner's claim that he was denied the benefit of counsel is emphatically denied by Mr. Heisey.[2]

effect that this previous claim on his part was a pipe dream that he had had.

"I recall that at that time I was in doubt as to whether the Court would accept even a plea of guilty to second degree murder, and I think I so advised this petitioner. I feel reasonably certain that I advised this petitioner with reference to his right to the assistance of counsel, his right to a fair and impartial trial, and that he was under no compulsion or necessity of pleading guilty to any offense in this case. And I particularly had in mind his claim of intoxication and being under the influence of drugs. The latter claim, of course, constituted a defense.

"I might say that prior to May, 1932, I had handled quite a number of Indian murder cases, and that at all times I was particularly solicitous of the rights of members of the Chippewa tribe. My recollection is that before assuring this petitioner that he would be permitted to enter a plea of guilty to second degree murder, that it would be necessary for me to see and consult the Court.

"The Honorable W. A. Cant, United States District Judge, before whom I had appeared prior to May, 1932, in a number of Indian murder cases, was presiding at the term of court then being held. I left the St. Louis County Jail, and during the forenoon I talked with Judge Cant in chambers about the case, and I told Judge Cant all the circumstances and advised Judge Cant that this petitioner was insistent upon pleading guilty. After considerable conversation with Judge Cant, he indicated that if the petitioner were brought to the courtroom and still expressed a desire to enter a plea of guilty, with a complete understanding of the entire situation, he would accept the plea. My recollection is that thereafter I telephoned either to the Marshal's office in the Federal Building in Duluth, or to the Sheriff's office in the St. Louis County Jail, and asked that the petitioner be brought over for arraignment.

"The petitioner entered his plea of guilty to second degree murder, but before his plea was entered I stated to the Court, in open court, in the presence of the defendant, all of the circumstances and facts in the case, so that both

The depositions of other witnesses indicate that the Sheriff was a kindly man and the very opposite of what petitioner describes him to be. The Sheriff, his assistant and Judge Cant had died prior to the institution of the first habeas corpus proceeding by petitioner. Judge Cant was an unusually conscientious and cautious judge. There can be no doubt that the court, like Mr. Heisey, fully advised petitioner of his rights under the Constitution of the United States to be represented by counsel, and that the Court would appoint counsel for him if he was without funds.

The depositions of the stenographer in the Sheriff's office, of the doctor who had visited petitioner in the County Jail, and of the Agent of the Federal Bureau of Investigation who was advised by petitioner that he was guilty of the offense charged and desired to plead guilty as soon as possible, were taken and are in the file of this case. The testimony of the witnesses called by the government makes obvious that petitioner has not sustained the burden placed upon him.

At the hearing in the present matter, petitioner was ably represented by counsel appointed for him. At the request of counsel the hearing was continued from time to time to permit careful investigation and research. At oral argument petitioner's counsel cited: Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357; Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Carter v. Illinois, 329 U.S. 173, 67 S.Ct. 216, 91 L.Ed. 172; Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309.

The Court has reviewed these authorities, together with cases cited by petitioner in the motion he prepared "to vacate sentence and to set aside judgment." With the exception of the Carter and Von Moltke cases the authorities relied on by petitioner were all decided prior to the habeas corpus proceedings commenced by him in the Kansas court. The Court of Appeals for the Tenth Circuit denied relief to petitioner in each instance. See DeJordan v. Hudspeth, 10 Cir., 137 F.2d 943, certiorari denied. De Jordan v. Hunter, 320 U.S. 779, 64 S.Ct. 87, 88 L.Ed. 468; DeJordan v. Hunter, 10 Cir., 145 F.2d 287, certiorari denied 325 U.S. 853, 65 S.Ct. 1083, 89 L.Ed. 1974. The record now before this Court was before the Court in the last-cited cases. The claims now made by petitioner were made in the two

the petitioner as well as the Court would know the entire situation as it existed within my own personal knowledge.

"During all the time that I was an assistant in the United States Attorney's office, there never was an instance, to my recollection, when a defendant in a criminal case, particularly a murder case, appeared without counsel, and indicated a desire to enter a plea of guilty, that the Court failed to call the defendant's attention to his constitutional right to the assistance of counsel, to his right to a fair and impartial trial, and to the fact that if he had no funds, the Court would appoint counsel in his behalf to defend him. And I am positive that in this case Judge Cant, as was usual in every case where a defendant appeared without counsel, gave this petitioner to understand fully and comprehensively his constitutional and legal right in the matter. Knowing Judge Cant as I did, I know that he would have absolutely refused to have accepted a plea from this petitioner, or from any other defendant, without talking to the defendant from the bench, and advising him fully as to his rights and privileges.

\*    \*    \*    \*    \*    \*    \*

"I can say with reasonable certainty that this petitioner was fully advised, either by myself or by the Court, or by both, that he was entitled to counsel, and that if he had no funds the Court would appoint counsel for him. I know of no case that I ever handled in which this was not the regular procedure, and I want distinctly to say this at this time: that Charles DeJordan, alias Charles Fisher, at no time was imposed upon by me in any way, and at no time was there any concealment from him on my part of any of his rights, or any information that he was entitled to. There was no reason whatsoever in this case why this petitioner could not have had counsel—could not have had a fair and impartial trial. And there was no disposition on the part of myself or anyone within my knowledge, to deprive him in any way of any of his rights or privileges."

habeas corpus proceedings commenced in the Kansas court. They were determined adversely to petitioner. While the first case was disposed of on a technicality, the second proceeding was decided on the merits. It appears that the present case is but a repetition of what was presented to the Court in 145 F.2d 287, in which ceritiorari was denied by the United States Supreme Court. Manifestly, the relief petitioner now seeks is similar to that sought by him in the last-cited case.

Under the circumstances, it seems clear that petitioner has failed to carry the burden of sustaining his contentions by a preponderance of the evidence. Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L. Ed. 830.

I am satisfied that the Court had jurisdiction, and that the petitioner was fully and fairly apprised of his rights to counsel.

The motion to vacate the judgment is denied, and it is so ordered. The United States Attorney may submit findings of fact and conclusions of law in accordance herewith.

Petitioner may have an exception.