People of State of Illinois, Defendant in Error, v. Harold Markley (also known as Harold Martley), Plaintiff in Error.

Gen. No. 45,058.

Opinion filed March 14, 1950. Released for publication April 3, 1950.

PATRICK T. DRISCOLL, of Chicago, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, Springfield, for defendant in error; JOHN S. BOYLE, State's Attorney, of Chicago, and JOHN T. GALLAGHER, RUDOLPH L. JANEGA, and E. F. WELTER, Assistant State's Attorneys, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Harold Markley sued out a writ of error to the Supreme Court of Illinois to review an order of the municipal court striking his petition in the nature of

a writ of error *coram nobis* for want of jurisdiction. Pending the appeal in the Supreme Court, he made a motion for supersedeas and bail. In an order entered on November 22, 1949, it was adjudged that the cause had been wrongfully appealed to that court, and accordingly the motion for supersedeas and bail was denied, and the cause, together with the motions made, was transferred to the Appellate Court, without opinion. On December 22, 1949, we ordered that the writ of error be made a supersedeas, and fixed bail.

The case was originally tried in the municipal court upon an information charging plaintiff in error with violation of ch. 134, par. 15a, Ill. Rev. Stat. 1947 [Jones Ill. Stats. Ann. 130.19]. He was found guilty, sentenced to the House of Correction for one year and fined $300. The order entered at the conclusion of the hearing recites that he had waived trial by jury and submitted the cause to the court. He was not represented by counsel, and the record does not contain a transcript of the evidence adduced upon trial.

On April 12, 1949, plaintiff in error filed a motion to correct errors in fact in the municipal court before the trial judge who had heard the cause, alleging that his arrest by the police officers of the City of Chicago was illegal; that they connived and conspired with the police officers of the City of Gary, Indiana, to transport him to Chicago for the sole purpose of delivering him to the Chicago police, without the proper procedure for arrest and extradition, as required by the statutes of Illinois and Indiana; and that at the time of his arrest there was no complaint or warrant pending before any court in this jurisdiction; that plaintiff in error, upon his arrest on March 11, 1949, was not charged with any crime or violation of any Illinois statute, and that he was not afforded an opportunity to secure counsel for the protection of his rights; that it was not until three days thereafter, during which he was held in custody of

the Chicago Police Department, that charges were preferred against him; and that after being apprised of the charge set forth in the information, he was given no opportunity to employ counsel or adequately prepare his defense. His motion further sets forth that it was improper to admit in evidence at the hearing certain articles of personal property belonging to him, which were unlawfully and illegally secured by the police officers without a search warrant, and it is alleged that the articles would have been excluded had he been afforded an opportunity to retain counsel, who would have moved for their exclusion; that the findings of the court were contrary to the evidence, in that the only testimony, other than purported admissions of plaintiff in error, which were subsequently denied by him, was that of several police officers; and he asked that the findings of the court be vacated and set aside, and that he be granted a new trial wherein he could be represented by counsel and properly present his defense.

The court granted him leave to file the petition on the day of its presentation, and the state's attorney was ordered to plead, answer or demur thereto instanter. A motion to dismiss the petition was thereupon filed, and the matter was continued to April 13 for hearing on the petition and motion. After numerous further postponements the petition, supported by affidavit, was heard July 7, 1949, plaintiff in error in the meantime having obtained counsel, who appeared and participated in the hearing.

The state's attorney assigned the following reasons in support of the motion to dismiss the petition: (1) that the motion or petition under section 72, chapter 110 (Civil Practice Act), Smith-Hurd Illinois Statutes 1935, in the nature of a writ of error *coram nobis,* was not filed as a new civil suit with a new docket number; (2) that it did not state facts, but mere conclusions;

194

(3) that the alleged facts stated by the petitioner were known to him at the time of the trial, and through his own negligence and carelessness were not presented to the court; (4) that petitioner was not prevented, either by duress, fraud, excusable mistake or ignorance, from presenting to the court the facts alleged in his motion at the time of the trial; (5) that alleged newly discovered evidence was not ground for relief under sec. 72 of the Civil Practice Act; (6) that petitioner did not even aver that the testimony of the new witnesses was not known to him at the time of the trial, or that he had not had full opportunity to present such testimony, or that the testimony of the new witnesses would show that he was not guilty of the charge in the information filed; (7) that petitioner did not request counsel, and if he had done so the court would have appointed an attorney; and (8) that the facts alleged in petitioner's motion were not sufficient to give the court jurisdiction.

At the hearing on July 7, 1949, plaintiff in error presented an affidavit in support of his original motion to correct errors. The court allowed him to file the affidavit, but denied his motion. The affidavit reads as follows:

"HAROLD MARTLEY, also known as Harold Markley, being first duly sworn on oath, deposes and says that he is the defendant in the above entitled case, and that he is a tuck pointer by occupation, residing at 354 Van Buren Street, in the City of Gary, State of Indiana.

"1. Affiant states that on the 11th day of March, A. D. 1949, he was arrested by Gary police officers who questioned him on the subject of telephone coin boxes being broken into, though no charge of such or any other nature had at that time been placed against him; that the said police officers later ordered him to drive across the Indiana State Line into the State of Illinois,

to a point on Indianapolis Boulevard, in Chicago, Illinois, where three Chicago Police officers curbed his automobile, and that the two Gary police officers stepped out of his automobile and into a Gary police car that had been following them, and their places were taken in his automobile by the Chicago police officers; that he was ordered to drive to the Central Police Station, at 11th and State Street, in the City of Chicago; and that all of said mentioned proceedings on the part of said officers were without proper procedure of arrest and extradition as provided for in the Statutes of the State of Indiana, and Illinois, and contrary to the law of the land.

"2. Affiant further states that on March 11, A. D. 1949, at 10 :00 A. M., Gary police Officers without warrant came to his home, told him that he was under arrest and wanted at the police station: that he was taken to the police station and there questioned on the subject of breaking into telephone coin boxes; that without a search warrant said officers had searched his automobile and removed therefrom, a safety pin attached to a blanket in said car; that at the station a representative of the Illinois Bell Telephone Company was present who accused this affiant of being in Chicago, Illinois, on March 10, and participating in the opening of telephone coin boxes in the said City of Chicago, that thereupon two Gary Police officers entered his car one in the front seat, and one in the rear seat and ordered him to drive to Chicago, though at no time had he been legally charged with any crime or offense.

"3. Affiant further states that after they had crossed the Indiana State line into Illinois, there he was ordered to proceed along and upon Indianapolis Boulevard in the City of Chicago, and that he was followed by a Gary police car; that while progressing upon said Indianapolis Boulevard in the City of Chicago, a squad

196

car in which were riding three Chicago police officers, they ordered him to stop his car and thereupon the Gary police officers left his car, and the Chicago police officers took him into custody and removed him to police headquarters, at 1121 South State, Chicago, where he was held incommunicado not being allowed to talk to anyone or to call up his friends for assistance.

"4. Affiant further states that he was grilled and questioned on the night of March 11, A. D. 1949, and accused of breaking into telephone coin boxes denying the charge at all times; that he was hung up by his wrists and forced into admissions, and finally in desperation and with a desire to escape further punishment agreed to try to open a telephone box at the La Salle Street station, in Chicago; that he tried to open three boxes and could not open any of them.

"5. Affiant further states that he demanded the right to get a lawyer and a bondsman, but he was told by the police that no lawyer could do him any good, and that if he did not 'shut up' he would get some more of the treatment he got Friday night; that on Monday morning, March 14, A. D. 1949, he was brought before Judge HAROLD O'CONNELL, in Branch 27 of the Municipal Court of the City of Chicago, and there legally charged for the first time; that he had no lawyer, but that when the clerk asked him if he was 'guilty' or 'not guilty,' he answered 'not guilty'; that the Clerk of the Court read the complaint of charge to him, but at no time was he furnished with a copy of said complaint or information as required by Law.

"6. Affiant further states that thereupon a police officer testified that he, this affiant, did open a telephone coin box in the La Salle Street Station, and offered a wrench and a safety pin as evidence; that the wrench had been received from the Gary police and had never been in the possession of this affiant; and that the safety pin was alleged to have been found in the glove

197

compartment of affiant's automobile; that further police officers testified to admissions against interest alleged to have been made by this affiant.

"7. Affiant further states that being unfamiliar with Court procedure he was not aware of the fact that he was entitled to a jury trial if he so desired, and to the other protections which the Law provides for one accused of a crime, such as a motion to suppress evidence illegally obtained without a search warrant and the right to be represented by counsel, and made no objection to the case against him being heard by the Court without a jury at that time.

"8. Affiant further states that he has at all times denied the commission of the offense charged in the information, and states that the evidence offered was insufficient to sustain the judgment of conviction rendered by the Court, and offers this affidavit in support thereof.

"9. This affiant further states that in addition to the motion heretofore made on April 12, A. D. 1949, by Patrick T. Driscoll, his attorney, he offers this affidavit in support of the original motion to correct errors in fact."

In the recent case of *People v. Dugan,* 401 Ill. 442, the court held that a petition in the nature of a writ of error *coram nobis* is an appropriate procedure. Although the facts and circumstances of that case differ from those in the case at bar, the legal questions presented were the same, and the procedure invoked on behalf of Dugan was similar. He had pleaded guilty to the charge of burglary, applied for probation which was denied, and was sentenced to from one to five years in the penitentiary. Several months later he filed a motion to correct errors in fact, representing ·that if the facts contained in his motion had been known to the trial court prior to sentence, the judgment would not have been entered. In his motion he stated a set

of facts which the Supreme Court characterized as ''an amazing story of false promises, entrapment and final imprisonment caused by the deception, force, duress and unwarranted action of a law enforcing officer,'' and noted that the petitioner was not represented by counsel at any stage of the trial. The People in the *Dugan* case, as in the case at bar, filed a motion to strike the petition, which was allowed, and the motion to correct errors was stricken. In reversing the judgment and remanding the cause with directions, the court said: ''The petition is in the nature of a writ of error *coram nobis* and comes to this court on writ of error. Similar petitions have frequently been reviewed in this court. *Hawks v. People,* 398 Ill. 281; *Thompson v. People,* 398 Ill. 366; *People v. Touhy,* 397 Ill. 19. . . . Any facts set forth in the petition which are well pleaded must be taken as admitted by the motion to strike. This is an appropriate procedure in criminal cases to set aside a conviction obtained by duress or fraud, or where, by some excusable mistake or ignorance of the accused and without negligence on his part, he has been deprived of a defense which he would have made at his trial, and which, if known to the court, would have prevented the conviction. *Thompson v. People,* 398 Ill. 366. . . . In *Hawks v. People,* 398 Ill. 281, we said: 'It has been frequently said that the remedy afforded by a writ of error *coram nobis* is almost one of necessity, when great injustice results from the court's lack of knowledge of facts constituting a defense, and the law affords no other remedy.' ''

██ With respect to the State's contention, and one of the reasons assigned in support of its motion to dismiss the petition, ''that the alleged facts stated by the petitioner were known to him at the time of the trial and through his own negligence and carelessness were not presented to the court,'' the Supreme Court

commenting on a like contention by the People in the *Dugan* case, pertinently observed that "We are not unmindful that the plaintiff in error knew all the facts recited in his motion at the time he pleaded guilty; that the common-law record shows all proper procedural requirements prior to the acceptance of the plea of guilty, and that all matters set forth in the petition are dehors the record. However, we have in mind recent pronouncements of the Supreme Court of the United States. In the case of *Carter v. People,* 329 U. S. 173, 67 S. Ct. 216, it was stated: 'The solicitude for securing justice thus embodied in the due process clause is not satisfied by formal compliance or merely procedural regularity. It is not conclusive that the proceedings resulting in incarceration are unassailable on the face of the record. A State must give one whom it deprives of his freedom the opportunity to open an inquiry into the intrinsic fairness of a criminal process even though it appears proper on the surface. *Mooney v. Holohan,* 294 U. S. 103. . . . Questions of fundamental justice protected by the due process clause may be raised, to use lawyers' language, dehors the record. . . .' "

██ The principal contention urged by the State is that the petition (together with the affidavit in support thereof) "does not state facts, but mere conclusions." A reading of the petition and affidavit answers this contention. Plaintiff in error makes specific charges of illegal arrest, kidnaping, wrongful detention and abuse. Any of the facts set forth in the petition which are well pleaded must be taken as admitted by the motion to dismiss. The petition sets forth a prima facie case of duress, coercion, wrongful detention and abuse. Plaintiff in error should therefore have been given a hearing on his motion to correct errors in fact.

Accordingly, the judgment of the municipal court is reversed and the cause remanded with directions that the State be required to answer the petition with affidavit attached, that a hearing be had on the petition and supporting affidavit and the answer thereto, and that further appropriate proceeding be had.

*Judgment reversed and cause remanded with directions.*

SCANLAN and SCHWARTZ, JJ., concur.