Joseph SALAZAR, Jr., Petitioner,

v.

Maurice H. SIGLER, Warden of the Nebraska Penal and Correctional Complex, Respondent.

No. 19936.

United States Court of Appeals,
Eighth Circuit.

April 16, 1971.

Rehearing Denied May 4, 1971.

Lay, Circuit Judge, dissented and filed opinion.

Earl H. Scudder, Jr., Lincoln, Neb., for appellant.

Ralph H. Gillan, Asst. Atty. Gen., Lincoln, Neb., Clarence A. H. Meyer, Atty. Gen., Lincoln, Neb., for respondent-appellee.

Before VAN OOSTERHOUT, MEHAFFY and LAY, Circuit Judges.

MEHAFFY, Circuit Judge.

This appeal is from a denial of petitioner's application for a writ of habeas corpus after a full evidentiary hearing. In the federal habeas proceedings, Judge Van Pelt appointed counsel for petitioner. Petitioner testified and was permitted to offer all the testimony he desired and announced to the court at the conclusion that he was satisfied with counsel.

We would ordinarily give this case summary treatment, but petitioner refused counsel in the state trial, pleaded guilty to murder in the second degree and was sentenced to life imprisonment. Petitioner has raised serious constitutional questions so we have not only reviewed the entire transcript of the habeas proceeding in the federal district court but the pertinent parts of the state record and exhibits as well. We affirm the judgment of the district court.

Briefly stated the facts are that petitioner on the night of the murder had consumed quite a bit of vodka and started bar-hopping in Hastings, Nebraska, drinking with various strangers. Shortly before the bars closed he met one Henry Spady, Jr. The two of them went to Spady's room where sometime during the night or early morning Spady was murdered. The next morning petitioner, a magazine salesman, left Hastings with his wife and other salesmen and went to Omaha, Nebraska. He was arrested while working in Omaha. Petitioner alleges that without informing him of his constitutional rights, the Omaha police asked him when he had last engaged in a fight and petitioner replied that he had been in a fight in Hastings, Nebraska the previous Saturday night. He alleges that they then informed him that Spady had died. The Hastings authorities were notified and the deputy county attorney and the sheriff went to Omaha and returned petitioner to Hastings. Upon arrival in Hastings petitioner was placed in jail and that night was interrogated by the

county attorney before a court reporter who took his statement. The next morning another statement was taken from him by the county attorney before the court reporter. He admittedly had gone to Spady's apartment and had a fight with Spady, cutting him several times with a knife and striking him with a beer bottle. He took some of Spady's clothing and departed, leaving Spady unconscious on the floor. He claimed he did not know that Spady was dead until informed by the Omaha police.

He now contends that he was coerced and induced into making his plea of guilty and that his basic rights guaranteed by the Constitution were violated in that he was not advised of his right to remain silent or that anything he said could be used against him, and that he did not knowingly, intelligently and voluntarily waive his right to counsel. He was twenty-one years old at the time and had finished the ninth grade. He had worked on a ranch until he took a job as a door-to-door solicitor of magazine subscriptions.

He asserts that his waiver of counsel was made without any comprehension of the nature of the charges, the statutory offenses included within them or knowledge of the possible defenses included therein; that he was unable to understand the complexities of the law and the consequences growing out of his waiver of right to counsel; and that he now knows he had a viable self-defense argument of which he had no knowledge at the time of his plea of guilty. He also contends that he did not intelligently and voluntarily waive his right to a jury trial and that his ability to make a voluntary decision was prevented by the statements of the county attorney and the sheriff who persuaded him to waive an attorney and enter the plea with the understanding that if he would do so his sentence would be between ten years to life, that the county attorney would assist him, and that he would get a ten-year sentence and be released within three or four years.

Before discussing the evidence adduced at the federal habeas trial covering 142 pages, we point out some pertinent portions of the record in the state court proceedings.

In August of 1966 petitioner filed a motion in the state court to set aside the judgment under the Nebraska post-conviction procedure. The state district judge denied this motion and the denial was affirmed by the Nebraska Supreme Court without an opinion.

The records of the state proceedings show that this case came on for preliminary hearing before the county judge in Nebraska upon a complaint charging petitioner with murder in the first degree and another count charging murder in the second degree. At this proceeding the complaint was read and the county court explained the nature of the preliminary hearing and of petitioner's rights therein, and advised that he was charged with a felony which could carry with it a death sentence. The court inquired of the defendant if he had counsel or wished to have a continuance in order to obtain an attorney of his own choice. The court also advised petitioner that if he did not have funds to obtain an attorney the court would appoint counsel at the county's expense. Petitioner stated that he wished to waive counsel at this stage of the proceedings. The court further inquired of petitioner if he had been mistreated in any manner or if any threats or promises had been made to induce him to enter a plea or waive any of his rights. Petitioner replied in the negative, stating that he wished to waive preliminary hearing.

Two days later, on April 28, 1966, petitioner was brought before the state district judge for arraignment. The state district judge addressed the petitioner extensively and explained to him that the charges could carry a sentence of death or life imprisonment and he was also advised of his right to trial by jury, to a continuance to enable him to prepare his defense, to an attorney at the county's expense and to compulsory

process. Petitioner stated that he understood his rights and did not desire to stand on them. When he made this statement, the court again explained to petitioner his right to an attorney at the county's expense but petitioner again stated that he did not want an attorney. He also stated upon questioning by the court that no force, threats, promises or any inducement had been made on or against him to induce him to plead or waive any of his rights. When he still persisted in proceeding without an attorney with full knowledge of his rights, the court directed the county attorney to read the information which was done in open court. After this the state district court inquired how petitioner wished to plead to the first count but petitioner did not answer. The court then inquired how petitioner pleaded to the second count, which was murder in the second degree, whereupon he pleaded guilty thereto. The deputy county attorney then moved the court to dismiss Count 1 which the court did, but accepted the plea of guilty to Count 2 and continued the case for pre-sentence investigation.

Thereafter on May 6, 1966 petitioner was brought before the court for sentencing. In the interim the judge had examined the pre-sentence report and stated that he had not read all of the evidence because it was so overwhelming. He characterized this case as " * * * one of the most brutal, sadistic cases I have seen or heard of. Knowing the evidence as I have learned from studying it, had you entered a plea of not guilty and had the jury found you guilty of First Degree Murder, I would have had no hesitation to send you to the electric chair. * * * " The state's attorney recommended a maximum sentence, noting that the autopsy showed more than twenty cuts, lacerations and puncture wounds of the deceased and that there was no substantial evidence that there was any motive of self-defense and no aggressive action on the part of the deceased. Petitioner was asked if he had anything further to say and he answered in the negative. The trial court then sentenced him to life imprisonment under his plea of guilty to murder in the second degree.

In the federal habeas proceeding, in its unpublished memorandum opinion the district court cited Kercheval v. United States, 274 U.S. 220, 223, 47 S. Ct. 582, 71 L.Ed. 1009 (1927), pointing out that a plea of guilty is in itself a conviction and like a verdict of a jury it is conclusive, and a court has nothing to do thereafter but to give judgment and sentence. Judge Van Pelt also cited Adkins v. United States, 298 F.2d 842, 844 (8th Cir. 1962), to the same effect, and then found that petitioner's plea of guilty was both voluntarily and intelligently made. The court further stated that it had examined the testimony and record and that it was impossible to reconcile the testimony of petitioner with the testimony of the county attorney, the sheriff and the court reporter. Furthermore, it is difficult, in part, to reconcile the letter (which it was stipulated could be read into evidence and which purported to be to some degree corroborative of petitioner's present contentions) with the testimony of petitioner. The court also pointed out inconsistencies in the testimony of the petitioner and noted that the record of the state trial court which also had been introduced into evidence at this hearing reflected the fact that petitioner was advised of his constitutional rights and intelligently and voluntarily waived them by his guilty plea. This court's per curiam opinion in Kress v. United States, 411 F.2d 16 (8th Cir. 1969), noted that a conviction based upon a guilty plea not voluntarily, knowingly and intelligently made is subject to a collateral attack, but that the judgment of a court carries with it a presumption of regularity, citing Smith v. United States, 339 F.2d 519, 526 (8th Cir. 1964), which opinion quotes from Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

Judge Van Pelt also found in his memorandum opinion that the Omaha police did not deprive petitioner of any

rights when they asked him about fighting prior to the time they advised him of his various rights. We note that in his first statement to the county attorney petitioner admitted that the Omaha officers had advised him of his constitutional rights. Nothing in the record of the proceedings indicates the statement petitioner gave to the Omaha police was used to coerce the guilty plea. Of course, if that statement had no influence on petitioner's pleading guilty, then his statement made to the Omaha police, even if unlawfully obtained, would be irrelevant.

In short, in addition to the warnings and inquiry as to his rights and waiver at the preliminary hearing and the arraignment, petitioner was fully advised of his rights by the county attorney before his statement was taken the night he was brought to jail in Hastings. He was again fully advised of his rights when a statement was taken the following morning, both before a court reporter. He also admitted in the federal habeas hearing that he had been advised by the state officers. For the federal district court to have held other than it did, it would have had to have credited the statement of petitioner as supported, if it was supported, by an inmate of the Utah Penitentiary against the testimony of the county attorney, the sheriff and the police officers. This would simply constitute a rule that anyone who pleads guilty without a lawyer, after having been advised several times by a county attorney, sheriff, other officers, county court and district court of his rights, is entitled to have the guilty plea set aside on the barest showing and would, in effect, destroy the presumption of regularity of judgments. Kress v. United States, *supra*.

Judge Gibson, speaking for this court in Burch v. United States, 359 F.2d 69, 74 (8th Cir. 1966), said:

"The constitution, however, does not require that counsel be forced upon an individual and does not prohibit the waiver of a right to counsel. See Carter v. People of State of Illinois, 329 U.S. 173, 174, 67 S.Ct. 216, 91 L. Ed. 172 (1946)."

The argument now made that petitioner has subsequently learned that he could have interposed a defense had he been more fully informed of the law is specious. When he persisted in pleading guilty, after having been given his constitutional warnings five times by the county attorney at Hastings, the judge at the preliminary trial and the sentencing judge in addition to admitting in the habeas hearing that the Omaha police had given him warnings of his constitutional rights, it certainly cannot be said that the state court should have gone further than it did in its extensive address to petitioner at the time of his plea. This court said in Michener v. United States, 181 F.2d 911, 918 (8th Cir. 1950):

"It is the responsibility of the court that the accused has been informed of his right to counsel and to appoint counsel if accused is unable to procure one and if the accused so desires. But it is not the duty or the responsibility of the trial judge to give legal advice to an accused, or to any party in any federal proceeding."

The burden is upon the petitioner to show that his plea was not voluntarily made.[1]

We are not ignoring the constitutional issues raised in petitioner's brief but

---

1. In Snyder v. State of Nebraska, 435 F.2d 679, 680 (8th Cir. 1970), this court said: "We have carefully reviewed the record and are convinced that the district court correctly found that petitioner did not meet his burden of showing that his plea was not voluntarily made. Copenhaver v. Bennett, 355 F.2d 417 (8th Cir. 1966); Harris v. Tahash, 353 F.2d 119 (8th Cir. 1965). See also, North Carolina v. Alford, 400 U.S. 25, 90 S.Ct. 160, 27 L.Ed. 2d 162 (1970); Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)."

simply state that they have no application here when the overwhelming evidence is to the effect that petitioner was repeatedly warned of his constitutional rights and persistently refused to permit the state court to appoint counsel for him.

The federal district court could have done nothing other than reject petitioner's petition for habeas corpus, and under such circumstances a reviewing court has no basis whatsoever to justify a reversal of the district court's judgment, and the same is affirmed.

LAY, Circuit Judge (dissenting):

I respectfully dissent.

This involves a capital crime. Under the existing record and federal constitutional standards the defendant did not make an intelligent and knowing waiver of counsel at the time of his guilty plea. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The defendant was a 21 year old Mexican youth with a ninth grade education. He was charged with the crimes of first and second degree murder. At the time of Salazar's plea, the county attorney bargained with him, without presence of counsel, to dismiss the charge of first degree murder in return for a guilty plea to second degree murder. This fact was not disclosed to the state trial court. The state stood mute when the court asked the defendant whether any promise had been made which induced his plea.[1]

At the time the defendant allegedly "waived" counsel, the record is clear that the trial court *did not*: (1) explain the nature of the charges; (2) make a searching inquiry as to whether the defendant understood the nature of the charges; (3) determine whether there was a factual basis for the plea of guilty; or (4) explain in any way the possible defenses or mitigating circumstances that would be available under the facts.[2]

The record is patently deficient in showing any penetrating or comprehensive discussion between the court and the accused. The accused had no prior experience in criminal courts or criminal procedure. His post-conviction statement made in the federal district court substantially corresponds with his pretrial statement to the county attorney. He awoke in a hotel room after a drinking spree with the deceased and found the decedent stealing his clothes and money. The decedent attacked him with a knife. They had a fight in which both parties were cut. The petitioner hit the victim over the head with a bottle, left him unconscious, allegedly not realizing that mortal wounds had been inflicted.

---

1. I have previously discussed how this constitutes fraud on the court and should not be condoned under any circumstances. See Meyer v. United States, 424 F.2d 1181, 1193 (8 Cir. 1970) (dissenting opinion).

2. The federal district court in denying the petition for a writ of habeas corpus emphasizes Burch v. United States, 359 F.2d 69 (8 Cir. 1966) and Michener v. United States, 181 F.2d 911, 918 (8 Cir. 1950), where this court observed: "And upon finding a competent, intelligent and intentional waiver of counsel, it is not *then* any the more the duty of the trial judge to advise an accused respecting possible defenses." 181 F.2d at 918. (My emphasis.)

As I observed in *Miner*, infra, this places the cart before the horse. The *Michener* statement should be openly rejected as establishing a patently erroneous constitutional standard of waiver. Implicit in the inquiry as to a "competent, intelligent and intentional waiver" is whether the accused understands possible defenses which counsel might make on his behalf. One cannot make a valid waiver without the proper ingredients of inquiry which serve to determine the waiver. To find that waiver of counsel exists and then say that after it exists there is no duty to advise an accused respecting possible defenses is a contradiction I do not understand. Cf. McGee v. United States, 355 U.S. 17, 78 S.Ct. 64, 2 L.Ed.2d 23 (1957), reversing United States v. McGee, 242 F.2d 520 (7 Cir. 1957). See also the discussion in United States v. Warner, 428 F.2d 730, 742 n. 1 (8 Cir. 1970) (dissenting opinion).

The state trial judge's apprehension of a "brutal crime" is not justified on this record.

Acceptance of continued emphasis upon technical waiver of counsel from an accused simply because he is informed of his right to counsel and he repeatedly rejects the assistance of counsel is abhorrent to constitutional principles. See discussion and cases set forth in the dissenting opinions in United States ex rel. Miner v. Erickson, 428 F.2d 623, 631 (8 Cir. 1970) (Lay, J., dissenting); United States v. Warner, 428 F.2d 730, 740 (8 Cir. 1970) (Lay, J., dissenting). Constitutional waiver of counsel requires more than this. Von Moltke v. Giles, 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948).

The corollary to what I shall call the "doctrine of technical waiver" seems to be the refuge that a court cannot force counsel on an accused. I repeat my observation in *Miner,* supra:

"The legal recognition that the Constitution 'does not require under all circumstances counsel be forced upon a defendant' does not serve as justification for an inadequate waiver. The court's responsibility must go beyond a mere recommendation of counsel when the record clearly demonstrates an accused's lack of capacity to understand the complexities of a charge and the existing defenses to it." 428 F.2d at 636.

As pointed out in *Miner,* Mr. Justice Frankfurter qualified his statement that the "Constitution does not force a lawyer upon a defendant": before waiver is accepted the accused must know "what he is doing and his choice [must be] made with eyes open." Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942).

A writ of habeas corpus should be granted to afford the petitioner, now sentenced to life in prison, a new trial with adequate representation by counsel.