Joe **HEGWOOD**, Petitioner,

v.

Harold R. **SWENSON**, Warden, Missouri
State Penitentiary, Jefferson City,
Missouri, Respondent.

No. 19515–4.

United States District Court,
W. D. Missouri, W. D.

June 7, 1972.

Malcolm Robertson (Blanchard, Van Fleet, Robertson & Dermott), Joplin, Mo., for petitioner.

Kenneth M. Romines, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

ELMO B. HUNTER, District Judge.

Petitioner, a convicted state prisoner who is currently confined in the Missouri State Penitentiary at Jefferson City, Missouri, has filed in forma pauperis a petition for writ of habeas corpus challenging the constitutional validity of his state conviction and sentence. Leave to proceed in forma pauperis was granted by the Court in the order to show cause which was entered on July 28, 1971.

On August 20, 1964, petitioner was sentenced by the Circuit Court of McDonald County, Missouri, to a term of life imprisonment following his earlier plea of guilty to charges of robbery in the first degree. At the same time, petitioner also received a concurrent two year term of imprisonment after his plea of guilty to a "bogus check" charge. He then filed a motion in the Circuit Court of McDonald County pursuant to Missouri Rule 27.26, V.A.M.R., which was denied after an evidentiary hearing. That denial was affirmed on appeal by the Supreme Court of Missouri. State v. Hegwood, 415 S.W.2d 788 (Mo.1967). Subsequently, Missouri Rule 27.26 was amended and petitioner was allowed to file a successive Rule 27.26 motion in the Circuit Court of McDonald County, Missouri. Again, the Rule 27.26 motion was denied by the Circuit Court of McDonald County following a full evidentiary hearing and the denial of petitioner's motion was affirmed by the Supreme Court of Missouri on appeal. Hegwood v. State, 465 S.W.2d 476 (Mo. 1971).

In this proceeding for a writ of habeas corpus, petitioner presents basically the identical contentions that he earlier raised in his second Rule 27.26 motion and the appeal from the denial of that motion. Petitioner urges: (1) that his plea of guilty to robbery in the first degree was involuntary, (2) that he was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and (3) that counsel was not present to represent him at the time he waived a preliminary hearing, a contention which was raised during the evidentiary hearing in this proceeding, but not in petitioner's initial petition for writ of habeas corpus. During the evidentiary hearing in this cause, petitioner conceded that any contentions relating to his "bogus check" charge and conviction rendered in the Circuit Court of McDonald County, which was to run concurrently with the conviction presently under attack, have not been presented to

the Missouri state courts and that his state post-conviction remedies have not been fully exhausted as to them.

▉ Because petitioner had not filed a petition for rehearing or for a transfer of his appeal to the Supreme Court of Missouri *en banc* for rehearing with regard to his latest appeal to that court, respondent contends that petitioner has not fully exhausted his available state post-conviction remedies with relation to his contentions arising from his conviction for robbery in the first degree. However, as indicated by this Court at the evidentiary hearing in this cause, the transfer of an appeal to the Missouri Supreme Court *en banc* for rehearing or a rehearing of an appeal by the panel which initially decided that appeals are largely discretionary procedures which are not presently available to petitioner since the time for filing appropriate motions has passed. Neither the requirements of 28 U.S.C. § 2254, which compel the exhaustion of "any available procedure," nor considerations of comity between the state and federal courts require that petitioner, in the absence of a dissent to the opinion of the Supreme Court of Missouri, must now attempt to initiate a further Rule 27.26 proceeding simply because he did not file motions in the Supreme Court of Missouri for rehearing or for transfer of his appeal to the Supreme Court *en banc*. Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed. 418 (1971); Robinson v. Swenson, 331 F.Supp. 483 (W.D.Mo.1971); Harris v. Swenson, Civil Case No. 19,703–3 (W.D.Mo.1972) (unreported). Thus, contrary to the assertions of respondent, it is clear that petitioner has, in fact exhausted all his currently available state post-conviction remedies with regard to the contentions he now seeks to raise in this Court.

The following facts underlying petitioner's state criminal proceedings are revealed by the record of petitioner's second Rule 27.26 hearing and the testimony and evidence adduced in the hearing held in this federal habeas action. Petitioner was initially arrested in Mt. Clemens, Michigan upon first degree robbery charges then pending in McDonald County, Missouri. He waived extradition and returned to Missouri voluntarily. Approximately one week later, petitioner appeared in the Magistrate Court of McDonald County, Missouri, where he appeared before the Magistrate Judge for preliminary hearing. Petitioner was advised by the Magistrate that he was present for preliminary hearing upon the criminal charges pending against him. Since petitioner advised the Magistrate that he desired the service of counsel prior to the preliminary hearing, the Magistrate continued the proceedings so as to enable petitioner to obtain an attorney. Later, petitioner appeared again before the Magistrate and waived preliminary hearing in the criminal proceedings against him.

On August 14, 1964, petitioner was brought before the Circuit Court of McDonald County for the purposes of arraignment upon the pending first degree robbery charge and the "bogus check" charge. During this arraignment proceeding petitioner advised the court that he desired to enter a plea of guilty to the charges. However, because petitioner was not represented by counsel at the time, the state judge refused to accept petitioner's tendered plea of guilty and continued the criminal proceedings until petitioner could appear with counsel. Shortly thereafter, the state judge, on his own motion, appointed a local attorney to represent petitioner in the defense of the pending criminal charges. Later, however, after being advised that petitioner's appointed counsel also represented the complaining witness in the criminal action against petitioner, the state court allowed petitioner's first appointed attorney to withdraw as attorney of record for the defense.

On August 17, 1964, petitioner again appeared before the Circuit Court of McDonald County for arraignment. In light of the withdrawal of petitioner's previously-appointed counsel, the court appointed another local attorney, who

was then present in the courtroom. Following a recess in the proceedings petitioner again appeared before the court with his court-appointed counsel and entered a plea of guilty to the charges pending against him. The record of that arraignment, as set forth in the findings of the state judge following petitioner's second Rule 27.26 hearing, is as follows:

The Prosecutor (In response to court-directed inquiry as to the underlying facts of petitioner's offense):

"The facts are, your Honor, that on the night of July 16 of this year, last month, Joe Hegwood and another young man came to McDonald County from Benton, Arkansas, driving an automobile. They went to the Big Sugar Drive-In, drank some beer; they had been drinking beer and whiskey during that day. They had consumed probably, according to Mr. Hegwood, maybe a pint and a half of whiskey and possibly three cases of beer. They went to Big Sugar Drive-In, which is in McDonald County between Pineville and State Line, on present Highway 71, stayed there for some time that night. And when they got ready to leave there, Mr. Hegwood here wrote the check to the Big Sugar Drive-In and at that time he bought a case of beer and received the change and difference in money.

The Court: That's here in McDonald County?

The Prosecutor: Yes, sir, that is the $10 check which is the subject of the companion charge. Mr. Hegwood obtained beer and money for the $10 check and he had no funds in the Bank of Pea Ridge, on which the check was drawn at that time. Mr. Hegwood and his companion left; his companion is a younger man, about 18 years old or thereabouts. They left the Big Sugar Drive-In and proceeded in this 1953 Chevrolet, I believe it is, on down toward the State Line, and they stopped in at the State Line, and Mr. Hegwood got a .12 gauge double-barrel shotgun out of the back seat of that old car and went inside and held up the M and A Liquor Store, which the trade name, which is operated as a liquor store—filling station, by Mr. John M. Ralston.

Mr. Hegwood walked in the store and when he walked in, he did not appear to be drunk, and he pointed the shotgun at Mr. Ralston and said, according to Mr. Ralston's statement, "I am going to kill you," and he stepped back behind the counter, and he said, "Open that cash register." Mr. Ralston opened the cash register and Mr. Hegwood said, "Put your hands in front of your head, walk in front of the counter, I am going to kill you." The cash register was then opened as Mr. Ralston complied, did what he was asked to do. He had his back turned to the defendant. The shotgun sounded, the blast sounded, and Mr. Ralston was completely surprised. He felt shock and surprise and no immediate pain, and he slumped over, fell and slumped over against the counter, but did not go down, and he asked the defendant if he could sit down, and Mr. Hegwood said, "Hell no, I'm going to kill you." and he made him stand on his feet during the entire rest of the time of the robbery.

Mrs. Ralston screamed and came out of the back room, and the defendant told her to put all the money in a sack and he also told her to reach under the counter and get another box, which contained some money. She did reach under the counter and got the box, and the defendant said "Let's go in the other room," referring to the filling station part of the business, and Mr. Hegwood said, "Let's get the rest of the money," and he forced Mr. Ralston and Mrs. Ralston, and Mr. Ralston at that time was in a very weakened condi-

tion of course. He was shot in the shoulder. He herded Mr. and Mrs. Ralston to the filling station portion of the business, and Mr. Hegwood then asked where the filling station attendant was, and Mr. Ralston said, "He is probably outside." Hegwood said, "You better get him in here or I will kill you," and the filling station attendant, whose name was Willard Walt Hall, was not outside, he was just beyond another doorway off the filling station in sort of a closet. He stepped out, the defendant Hegwood herded all three of them, that is, the filling station attendant and Mr. and Mrs. Ralston, to the back room of the liquor store, and he cursed and said that "If you intend to live, you would stay there five minutes." Then he left while they were—after he herded them in the back room and admonished them to say there— left and went and got in the motor vehicle immediately, as I understand it. He took off and left there. He was later—after the sheriff got some leads, the sheriff located him and his companion, the other fellow who was with him on this robbery, in Mt. Clemens, Michigan, and the sheriff caused the arrest, and he was extradited and brought back here. I have one recommendation only. Whatever the penalty that is assessed, I recommend that the sentence for the check and the sentence for the robbery be concurrent. I have no other recommendation.

The Court: Mr. Hegwood, has there been any force or any promises or anything made to you as to you entering a plea of guilty here in this case?

Petitioner: No, sir.

The Prosecutor: There is one other thing I should add. Mr. Hegwood, according to his statement, was convicted as a felony (sic) in the State of Arkansas on September 16, 1963. He was convicted of forgery and uttering a bad check, he states, in Benton County, Arkansas, and he received two 2 year-sentences to run concurrently, September 16, 1963. He is on parole from the Arkansas Penitentiary at this time.

The Court: I am going to accept your plea of guilty in this case, and the Court will sentence you in this case on Thursday morning, August 20, 1964, at 10:30. At this time you are remanded back to the custody of the Sheriff of McDonald County. Do you have any just or legal reason why the sentence of the Court shouldn't be pronounced against you at this time?

Petitioner: No, sir.

The Court: Mr. Sheriff, this man is remanded to your custody. Have him before this Court on Thursday morning at 10:30 o'clock. Mr. Graves, it will be necessary for you to be here at that time also.

On August 20, 1964, petitioner, with counsel, came before the Circuit Court of McDonald County for sentencing in connection with the two pending criminal cases. A portion of that sentencing procedure was as follows:

The Court: On the 17th day of August you entered a plea of guilty to this charge [first degree robbery]. Do you have any just or legal reason why the sentence of the Court shouldn't be pronounced against you at this time?

Petitioner: No, your honor.

The Court: You have had adequate time to consult your attorney on both of these cases?

Petitioner's Counsel: Yes, your Honor, I have consulted with Mr. Hegwood.

The Court: And he pleads guilty because he is guilty of this charge?

Petitioner's Counsel: Yes, he is.

The state judge then imposed a life sentence upon petitioner upon the charge of first degree robbery and stated the factors which were taken into consideration by him in arriving at this

sentence. Petitioner earlier had been sentenced to a term of two years imprisonment upon the "bogus check" charge.

At the close of the sentencing procedure, the state judge concluded, "[T]he Court appreciates the services of Mr. Graves, . . . the Court believes that he has competently represented his client. Nothing better could have been done by any attorney practicing in this district."

■ Aside from the conclusions of the state trial judge concerning the competency of petitioner's court-appointed attorney, however, the question of the adequacy of the representation afforded by petitioner's counsel, as a matter of current federal standards, remains for determination in this federal habeas corpus proceeding. As to this contention, petitioner urges in his traverse that a "prima facie case of ineffective assistance of counsel is [made out] when . . . a guilty plea [is] entered immediately after counsel is appointed." Because counsel was appointed a short time prior to the entry of petitioner's plea of guilty, he contends that "the burden of going forward with the evidence" is upon respondent "to support a finding that the defendant was not deprived of his constitutional rights" relating to the assistance of counsel.

■ Generally, the burden of proof in a habeas corpus proceeding is upon the petitioner seeking relief to establish that he has been deprived of a constitutionally-protected right. Salazar v. Sigler, 441 F.2d 834 (8th Cir. 1971); Snyder v. State of Nebraska, 435 F.2d 679 (8th Cir. 1970); Kruchten v. Eyman, 406 F.2d 304 (9th Cir. 1969); Smith v. Crouse, 413 F.2d 979 (10th Cir. 1969); Losieau v. Sigler, 406 F.2d 795 (8th Cir. 1969), cert. den. 396 U.S. 988, 90 S.Ct. 475, 24 L.Ed.2d 452. This includes a claim of ineffective assistance of counsel where the record affirmatively reveals that the habeas applicant was represented by counsel. Losieau v. Sigler, supra, at p. 801. With regard to instances in which counsel has been appointed imme-

diately prior to the arraignment or trial proceedings, however, there has been some question as to whether there then exists a presumption of the ineffectiveness of the representation afforded by counsel which requires the Government, be it state or federal, to show that the belated appointment did not prejudice the defendant. See, e. g.: Fields v. Peyton, 375 F.2d 624 (4th Cir. 1967); Twiford v. Peyton, 372 F.2d 670 (4th Cir. 1967); Pedicord v. Swenson, 304 F.Supp. 393 (W.D.Mo.1969), aff'd on other grounds 431 F.2d 92 (8th Cir. 1970); Johnson v. Cox, 315 F.Supp. 875 (W.D.Va.1970).

■ The adoption of a *per se* rule which would require the reversal of every case involving the late appointment of counsel has expressly been rejected by the Supreme Court of the United States. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). And, rather than applying a *per se* rule of ineffectiveness on the part of counsel or an artificially-created presumption which shifts the burden of proof to the Government to show lack of prejudice in every belated appointment case, the better and most logical approach in such cases is upon an *ad hoc* basis, viewing the circumstances in their totality to determine whether the individual petitioner has been deprived of the effective assistance of counsel. Rastrom v. Robbins, 440 F.2d 1251 (1st Cir. 1971); Moore v. United States, 432 F.2d 730 (3rd Cir. 1970) (*en banc*); Callahan v. Russell, 423 F.2d 450 (6th Cir. 1970); United States v. Ellenbogen, 365 F.2d 982 (2nd Cir. 1966), cert. den. 386 U.S. 923, 87 S. Ct. 892, 17 L.Ed.2d 795; Mosley v. Dutton, 367 F.2d 913 (5th Cir. 1966), cert. den. 387 U.S. 942, 87 S.Ct. 2074, 18 L. Ed.2d 1328. See also: Konvalin v. Sigler, 431 F.2d 1156 (8th Cir. 1970).

■ Using a "totality of the circumstances" approach, it is clear that petitioner's claim of ineffective assistance of counsel must fail. Although petitioner has testified that his court-appointed counsel did virtually nothing in his defense, the facts revealed through the tes-

timony of others, and the circumstances surrounding the arraignment and sentencing procedures involving petitioner belie this assertion. Following his appointment, petitioner's attorney adjourned to the rear of the courtroom to discuss the case with petitioner and to determine petitioner's potential plea. Counsel advised petitioner of the nature of the charges against him and the range of potential sentences which petitioner might receive upon the charges against him. He determined that petitioner understood the charges. After discussing both the nature of the charges and the range of possible sentences under the pending charges, petitioner's attorney then ascertained that petitioner still desired to enter a plea of guilty, as he had on two prior occasions. This conversation lasted between fifteen minutes to twenty minutes. Counsel then left petitioner to speak with the prosecutor to determine whether a recommendation would be made as to punishment and to assess the strength of the prosecutor's case against petitioner. According to the testimony of the prosecutor during the hearing in this cause, counsel spoke with him in his office for a substantial length of time with regard to petitioner's case. In that conversation, the prosecutor discussed the facts of the crimes committed by petitioner and indicated that the state possessed a "strong case" against petitioner. Counsel, however, elicited a commitment from the prosecutor that the state would recommend that the sentence imposed upon the "bogus check" charge should run concurrently with the sentence upon the first degree robbery charge in the event that a guilty plea was entered by petitioner on both charges. Counsel then returned to petitioner and informed him as to the conversation had with the prosecutor. After determining that petitioner continued in his desire to enter a plea of guilty to both charges, counsel appeared again before the court with petitioner. Petitioner then entered his plea of guilty.

After the arraignment process, counsel met with petitioner to determine whether there was anything he desired done in connection with his case or whether petitioner had questions concerning the impending sentencing process. He advised petitioner that he did not know the type of sentence he would receive, but that the prosecutor would make his recommendation concerning the concurrent running of the sentences. Apparently, petitioner did not request anything further with regard to his case.

Subsequently, counsel appeared with petitioner for the sentencing. Upon inquiry of the court, counsel stated that petitioner continued to desire the entry of a guilty plea upon the charges. Following the sentencing of petitioner, the court made a specific statement as to the competency of counsel's representation and expressed its appreciation for his services in connection with petitioner's case.

The current federal standard in testing claims of inadequate representation by court-appointed counsel has recently been announced by the Eighth Circuit Court of Appeals in Poole v. United States, 438 F.2d 325 (1971) at page 326:

"There is a presumption of the competency of court appointed counsel. Slawek v. United States, 413 F.2d 957 (8th Cir. 1969). A charge of inadequate representation can prevail 'only if it can be said that what was or was not done by the defendant's attorney for his client made the proceedings a farce and a mockery of justice, shocking to the conscience of the Court.' Hanger v. United States, 428 F.2d 746, 748 (8th Cir. 1970)." See also:

Kress v. United States, 411 F.2d 16 (8th Cir. 1969); Cardarella v. United States, 375 F.2d 222 (8th Cir. 1967), cert. den. 389 U.S. 882, 88 S.Ct. 129, 19 L.Ed.2d 176.

Measured upon this standard and judged in light of the credible evidence adduced

at the hearing in this cause, and at the Rule 27.26 hearing, including the testimony of petitioner's now deceased attorney, petitioner was not deprived of the effective assistance of counsel. Faced with a client insistent upon entering a guilty plea and the knowledge that the state possessed a "strong case" against petitioner, counsel did not make an independent investigation of the facts underlying the charges against petitioner. However, it is difficult to imagine what such independent investigation of the facts could have accomplished. Petitioner, the person who was in the best position to determine whether or not he had committed the criminal acts charged, had repeatedly attempted to enter a guilty plea upon the pending charges. This desire to so plead was conveyed to counsel. Counsel, however, did not rely solely upon the representations of his client, but instead contacted the prosecutor and determined that the state did, in fact, have a strong case against petitioner. Later, after the arraignment procedure, counsel ascertained that petitioner was apparently satisfied with the handling of his case and with what had occurred at the arraignment proceeding.

Although counsel did not present mitigating evidence on petitioner's behalf at the sentencing proceeding, there is nothing to indicate that such evidence was available or that, assuming its availability, such evidence would have had an effect upon the sentencing judge. The conduct of the participants in the sentencing proceeding indicate otherwise. When given an opportunity to speak on his own behalf in allocution, petitioner himself declined to make any statement of a mitigating nature. And, the recital of the sentencing judge indicates that he was primarily influenced by the extreme facts of the crime itself, rather than any other considerations. Thus, in light of all the circumstances of petitioner's case, particularly petitioner's continued position regarding his own guilt, it is clear that counsel's representation was not in-

adequate in the constitutional sense and did not render the proceedings a mockery of justice which was shocking to the conscience. Poole v. United States, *supra*. Therefore, petitioner's contention that he was deprived of the effective assistance of counsel in violation of his Sixth Amendment rights must be denied.

In his initial pleading in this proceeding, petitioner contended that "involuntary pleas of guilty were accepted by the trial court in violation of the Fifth and Fourteenth Amendments to the U. S. Constitution." From the authorities cited in support of that contention, it appears that petitioner also urges that the state trial judge was obligated to make certain inquiry of him as now required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Further, as a factual matter, petitioner contends that he was promised not more than a ten year term of imprisonment if he entered a plea of guilty and that this unfulfilled promise was a coercive factor in the entry of his guilty plea.

At the outset, it should be noted that petitioner's reliance upon Boykin v. Alabama, *supra*, is ill founded since his plea occurred long before *Boykin* was decided. The mandate of *Boykin* has not been retroactively applied by the Court of Appeals for the Eighth Circuit and therefore does not apply herein. Vaughn v. Swenson, 446 F.2d 1009 (8th Cir. 1971); Crosswhite v. Swenson, 444 F.2d 648 (8th Cir. 1971); Meller v. State of Missouri, 431 F.2d 120 (8th Cir. 1970), cert. den. 400 U.S. 996, 91 S.Ct. 469, 27 L.Ed.2d 445 (1971). Thus, as to petitioner's guilty plea, there remains only his contention that it was not voluntary. This contention is, however, conclusively refuted by the credible evidence revealed in the hearing in this cause and by the record of the state proceedings, both in petitioner's original criminal case and in his later Rule 27.26 action.

As previously noted, petitioner attempted to enter a guilty plea to the

first degree robbery charge in an arraignment proceeding which occurred three days prior to the actual entry of his plea. That initial tender of the guilty plea was rejected by the state trial judge because petitioner was without counsel. Later, the guilty plea was accepted only after petitioner had consulted with an attorney and the state trial judge had satisfied himself that the plea was, in fact, voluntary. In that respect, the state trial judge made certain inquiry as to the factual basis for the pending charges and inquired as to whether there had been "any force or any promises or anything made to" petitioner to induce his plea of guilty. Petitioner himself answered in the negative.

Subsequently, at the sentencing proceeding, the state trial judge again inquired as to the voluntariness of the guilty plea and was advised that petitioner desired to enter a plea of guilty "because he is guilty of [the] charge."

As to petitioner's claim that he was promised "not more than ten years imprisonment" by the prosecutor, the prosecutor testified that he had made no promises to petitioner concerning punishment and that he had made no threats. This testimony is supported by the testimony of Sheriff Tennison at the Rule 27.26 hearing. Sheriff Tennison had been present during a meeting between the prosecutor and petitioner, requested by petitioner, which occurred prior to the first arraignment proceeding. At that meeting, the prosecutor had refused to "bargain" with petitioner as to a recommendation because he was of the opinion that there existed a strong capital case against petitioner. He so informed petitioner as to the strength of the state's case and as to the potential punishment which petitioner might receive.

■ In addition to the advice which petitioner had received from the prosecutor concerning punishment and the strength of the state's case, as previously discussed in this opinion, petitioner was also fully advised by his court-appointed attorney concerning his case, the nature of the charges against him, and the range of punishment possible under the charges. Thus, in view of the above-mentioned circumstances, it is abundantly clear that petitioner's plea of guilty was voluntarily entered.

■ As to petitioner's contention that he was forced to waive a preliminary hearing without the benefit of counsel, there has been substantial testimony introduced in this proceeding by way of testimony and through the record of the Rule 27.26 proceeding that petitioner was not coerced into waiving a preliminary hearing and that he did so upon his own volition. Further, it is well established that petitioner's voluntary plea of guilty was "conclusive upon his guilt . . . and waives all non-jurisdictional defects in the proceedings against him." Parrott v. Brewer, 421 F.2d 1386, 1388 (8th Cir. 1970); United States v. Briscoe, 428 F.2d 954 (8th Cir. 1970); Ford v. United States, 418 F.2d 855 (8th Cir. 1969); Cantrell v. United States, 413 F.2d 629 (8th Cir. 1969); Hughes v. United States, 371 F.2d 694 (8th Cir. 1967). Lastly, because the proceedings before the Magistrate occurred prior to Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 389 (1970), petitioner was not entitled to counsel during those preliminary proceedings. Konvalin v. Sigler, supra; McClain v. Swenson, 435 F.2d 327 (8th Cir. 1970).

Accordingly, for the reasons stated above, the petition for writ of habeas corpus is hereby denied.

It is so ordered.