HARRIS, Judge.
Appellant was convicted of possessing marihuana not for his personal use and the jury assessed a fine against him in the amount of $25,000.00. The Court sentenced him to two years imprisonment in the penitentiary.
*876 Prior to arraignment appellant made known to the Court that he wanted to represent himself and did not want a lawyer to handle the case or assist him in his defense. It is most unfortunate that appellant rejected the offer of the trial court to appoint counsel to defend him. For a better understanding as to whether appellant was fairly advised of the charge against him and that he knowingly and intelligently waived his constitutional right to he represented by counsel, we quote from the record:
“THE COURT: Read the indictment.
“MR. ANDRES: ‘The State of Alabama, Tuscaloosa County, Circuit Court, July Term, 1975. 1. The Grand Jury of said County charge that before the finding of this indictment Rogers Beck-ley, whose name is otherwise unknown to the Grand Jury, did, after September 16, 1971, unlawfully possess marijuana, against the peace and dignity of the State of Alabama. Louis Lackey, District Attorney, Sixth Judicial Circuit.’ Under the laws of Alabama this indictment charges the unlawful possession of marijuana. This can be either a misdemeanor or a felony. If it should be found that the possession was not for the defendant’s own personal use then it would be a felony and the range of punishment is not less than two nor more than fifteen years in the penitentiary and in addition a fine not to exceed $25,000.00. However, should it be determined that the possession was for the defendant’s personal use and that the defendant has not had a prior conviction for a drug violation either in this state or any other state, then it would be a misdemeanor and the range of punishment is up to one year imprisonment and a fine not to exceed $1,000.00.
“THE COURT: Misdemeanor is what?
“MR. ANDRES: Zero to twelve months and zero to one thousand dollars.
“THE COURT: Do you understand that?
“MR. BECKLEY: Yes, sir, 1 understand that, Your Plonor.
“THE COURT: Mr. Beckley, you have told me but I will ask you again. You waive your right to have a lawyer ?
“MR. BECKLEY: Yes, sir.
“THE COURT: You want to represent yourself?
“MR. BECKLEY: Yes, sir.
“THE COURT: The court has offered to let a lawyer sit here in court with you if you so desire, but you do not wish that at all ?
“MR. BECKLEY: No, sir. I figure I can best handle it.
“THE COURT: You have that right under a recent decision of the United States Supreme Court. Since you do not have a lawyer, the gentlemen from the D.A.’s office, if you want to talk about some settlement, and I am not suggesting it but they will be available to talk about it.
“MR. ANDRES: I think the Court, for the record, might ascertain his educational background.
“MR. BECKLEY: I finished twelve years high school and four years trade school. I was in service in the Marine Corps.
“THE COURT: You understand, of course, when you defend yourself, there may be some questions come up that would be objectionable that a lawyer would object to, but that is what you want to do ?
“MR. BECKLEY: Yes, sir.
“THE COURT: You feel you are fully competent and qualified to do so ?
“MR. BECKLEY: Yes, sir.
*877 “THE COURT: The Court will be here and I will explain the method of selecting the jury if you don’t know how, but that is your right. You know the case hasn’t been set yet ?
“MR. BECKLEY: No, sir.
“THE COURT: Do we have your address here where you can be mailed a notice ?
“MR. BECKLEY: I have lived there approximately seventeen years and my age is forty years old.
“THE COURT: We have a public defender and I don’t know about your financial setup. I would ask them to advise you if you need legal advice. You can get it from them. We will see that you get a fair trial and they will see that you get a fair trial, but that will be up to you.
“MR. BECKLEY: I thank you, Your Honor.
“THE COURT: We will let the record show he maintains he is qualified to represent himself.
The judgement entry, in pertinent part, is as follows:
“August IS, 1975. This day comes Louis Lackey, as District Attorney who prosecutes for the State, and comes also the defendant in his own proper person and the defendant maintains that he is fully qualified to represent himself and does not want a lawyer at all or under any circumstances and further the Court ascertained that said defendant is a high school graduate and has attended trade school for four years, that he is fully capable of defending himself in this case by virtue of his life experience, that he under no circumstances would accept services of a lawyer in this case, that he positively did not want a lawyer to sit with him at counsel table in this case; that he wanted no legal advice in this case from any outside source; whereupon the Court again urged the defendant in this case to accept appointed counsel and he again flatly refused to accept such an appointment and thereupon the Court told defendant that he would be permitted to defend himself in this case.
Fred W. Nicol, Judge.”
Appellant was then arraigned and he pleaded not guilty to the indictment.
Just before the trial got underway it was discovered that the Clerk by oversight and inadvertence left on the strike list a juror who was then and there serving on a jury in another courtroom and he was left on the jury that was selected to try appellant. The Court, the attorneys for the State and the defendant then retired to the Court’s chambers, out of the presence and hearing of the jury, at which time the following occurred:
“THE COURT: In selecting the jury in this case it develops the clerk’s office had inadvertently left on the list for selection of the jury in this case a juror who was trying a case in another courtroom, thus leaving eleven jurors eligible to try this case at this time. The parties have agreed and the Court has ratified their agreement to let this case be tried by eleven jurors.
“MR. BECKLEY: Yes, sir.
“THE COURT: Said verdict, if any, there be returned will not be challenged on the basis of the fact only eleven jurors rendered, such verdict and the parties waive any right they might have to challenge such verdict.”
We are confronted with two major issues in this case: (1) Can an accused constitutionally waive his right to be represented by counsel and conduct his own defense, and (2) Can he constitutionally agree to be tried by a jury of eleven members. Both issues must be answered in the affirmative provided certain safeguards are adequately met.
*878 In Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562, the Supreme Court of the United States held that a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so, and that the state may not force a lawyer upon him when he insists that he wants to conduct his own defense.
In Faretta the Court went on to say:
“It is undeniable that in most criminal prosecutions defendants could better defend with counsel’s guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer’s training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him. Moreover, it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense. Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to hie own detriment, his choice must be honored out of ‘that respect for the individual which is the lifeblood of the law.’ Illinois v. Allen, 397 U.S. 337, 350-351 [90 S.Ct. 1057, 25 L.Ed.2d 353] (concurring opinion of Brennan, J.).
“When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must ‘knowingly and intelligently’ forego those relinquished benefits. Johnson v. Zerbst, 304 U.S. 458, 464-465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461. Cf. Von Moltke v. Gillies, 332 U.S. 708, 723-724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (plurality opinion of Black, J.). Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that ‘he knows what he is doing and his choice is made with eyes open.’ Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268.”
Article 1, Section 6, Constitution of Alabama 1901, provides “that in all criminal prosecutions, the accused has a right to be heard by himself and counsel, or either,” * * *
There is no constitutional provision, State or Federal, that required or permitted counsel to be thrust upon appellant against his avowed wishes. The choice to have counsel was his and his alone. The issue was not then and is not now whether he might have benefited by having counsel. If he freely, intelligently and knowingly waived his right to counsel, and the record in this case fully supports that he did so, this was his right and his action in so doing should be final. Ex parte Allison, 42 Ala.App. 507, 169 So.2d 436; Elrod v. State, 281 Ala. 331, 202 So.2d 539; Jones v. State, 50 Ala.App. 541, 280 So.2d 801; Irvin v. State, 44 Ala.App. 101, 203 So.2d 283; Adams v. United States, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268; Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309.
We turn now to the question whether appellant’s consent to trial by eleven jurors was constitutionally permissible.
The older Alabama cases hold that in a criminal case a verdict rendered by eleven jurors is invalid notwithstanding consent by the accused, the District Attorney and the trial judge. This was on the *879 theory that trial by jury, where provided for and had, must be before a common-law jury of twelve persons. Bell v. State, 44 Ala. 393; Cleghorn v. State, 22 Ala.App. 439, 116 So. 510. It should be noted that Bell was written in 1870 and Cleghorn in 1928.
The above Alabama cases were decided prior to Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854. In Patton the Supreme Court held that a defendant could consent to be tried by a jury of less than twelve.
In Kirk v. State, 247 Ala. 43, 22 So.2d 431, the Supreme Court expressly held that an agreement by appellant and the prosecuting attorney, with the approval of the Court, that a verdict rendered by eleven jurors did not deprive the defendant of any constitutional right.
Kirk was followed by Singleton v. State, 288 Ala. 519, 262 So.2d 768, which held that with the consent of the State and the Court a defendant charged with a non-capital felony may waive a jury trial, enter a plea of not guilty and be tried by a circuit judge without a jury, and such waiver is not violative of public policy.
On May 6, 1975, George Barrows, a Special Agent with the United States Treasury Department, appeared before a Federal Magistrate and made an affidavit leading to the issuance of a search warrant to search the residence of appellant located at 2806 39th Avenue, Tuscaloosa, Alabama for “one short barrel shotgun, single barrel, blue finish, with a pistol grip, and a barrel length of approximately 15 inches and an overall length of 21 inches, name brand unknown.” The affidavit was based upon information furnished Agent Barrows by an unidentified informer who had given reliable and correct information in the past.
On May 7, 1975, at 9:15 a. m., Agent Barrows and three other Special Agents went to appellant’s home and executed the search warrant. Appellant and his wife were present at the time the search warrant was served. In the den of appellant’s home was a pool table and underneath the pool table was a ledge upon which was found a sawed-off shotgun and two rolled cigarettes and cigarette papers. Other guns, pistols and revolvers were found during the search but it is unnecessary to further identify them.
Agent Barrows gave appellant the Miranda rights and warnings. Appellant stated that he understood his rights and that he did not want a lawyer. Agent Barrows further stated that no promises, threats, rewards, or other inducements were made to get appellant to make a statement and that he would answer any questions. Appellant admitted he owned the sawed-off shotgun an dthe marihuana cigarettes, adding that it was not illegal to own two “Mary Janes” in your house. The “Mary Janes” referred to were the two marihuana cigarettes.
Agent Barrows called Sergeant L. N. Bradford of the West Alabama Narcotics Squad in Tuscaloosa and he came to the appellant’s home in about 20 minutes and received the two cigarettes from Agent Barrows. He ran a “field test” on the cigarettes and determined the contents were marihuana. This material was subsequently delivered to the Toxicology Laboratory where a chemical analysis was made and the contents of the two rolled cigarettes, it was established, were marihuana.
Out of the presence and hearing of the jury, the prosecution sought a ruling on the validity of the search warrant and not be forced to introduce it into evidence and thereby cause any possible prejudice to appellant by disclosing federal offenses against him.
From the record:
“MR. ANDRES: Further let the record reflect we all approached the bench out of the presence of the jury and explained we wanted to go into the federal search warrant out of the presence of *880 the jury so as not to disclose to the jury the pending federal charge and further explain to Mr. Beckley we felt it would be to his benefit and we did not want to prejudice his case. And he stated he felt this was all one matter and he wanted to go into it. Is that essentially right, Mr. Beckley?
“MR. BECKLEY: Yes.”
Appellant cfoss-examined all of the State’s witnesses. He repeatedly asked questions about the sawed-off shotgun after the Court admonished him over and over again that the State was not interested in any of the guns and cautioned him to confine his questions to the marihuana charge for which he was on trial. He even introduced the shotgun into evidence over the prosecutor’s statement that the State, “had no wish that it be offered in evidence.”
After the State rested, appellant realized that he had blundered in rejecting the Court’s offer to appoint a lawyer to represent him and at that late time he requested the appointment of a lawyer. The Court denied the request saying, “I urged and begged you to let me get you a lawyer, even to sit with you at the table and you did not want one and you stated that you did not want one. And you stated you felt you were competent and qualified and I am going to overrule the motion.”
In Adams v. United States ex rel McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268, and Carter v. Illinois, 329 U.S. 173, 67 S.Ct. 216, 91 L.Ed. 172, the defendants had competently waived counsel but latex-sought to renounce actions taken by them while proceeding pro se. In both of these cases the Supreme Court of the United States upheld the convictions. Both Adams and Carter 'support the conclusion reached in Faretta that a defendant who represents himself may not thereafter dis-affii-m his deliberate trial decisions.
There is a footnote in Faretta that is worth repeating here :
“The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law. Thus, whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thei-eafter complain that the quality of his own defense amounted to a denial of ‘effective assistance of counsel.’ ”
A careful search of the record discloses there is nothing “open” to him on this appeal.
The judgment of conviction is affirmed.
AFFIRMED.
TYSON, DeCARLO and BOOKOUT, JJ., concur.