LEIGH M. CLARK, Retired Circuit Judge.
A jury found defendant (appellant) guilty of robbery in the first degree as charged in Count Two of a two-count indictment. In conducting the sentence hearing, after due *1118 notice had been given that the State would proceed under the Habitual Felony Offenders Act, it was shown that defendant had been previously convicted of at least three felonies and the court imposed a sentence to imprisonment for life without parole.
The first count of the indictment charged that defendant “did abduct Holly L. McClelland with the intent to inflict physical injury upon her, or to violate or abuse her sexually, in violation of § 13A-6-43 of the Code of Alabama.” In charging robbery in the first degree in the second count, it was alleged, inter alia, that defendant “did in the course of committing a theft of lawful United States Currency ... the property of Samuel Lenior, use force against the person of another present, Holly L. McClelland, with the intent to overcome her physical resistance or physical power of resistance” while defendant “was armed with a deadly weapon or dangerous instrument, to-wit: a knife, in violation of 13A-8-41 of the Code of Alabama.” At some time during the arguments of counsel for the parties to the jury, the District Attorney let it be known that the State withdrew Count One- of the indictment, and the case was submitted to the jury on Count Two only.
I.
The first issue presented in appellant’s brief is to the effect that the evidence on the trial was insufficient as a matter of law to sustain a conviction of robbery in the first degree. In the brief, appellant concedes that there was substantial evidence that defendant “used force against the person of another present, Holly L. McClel-land, with the intent to overcome her physical resistance or physical power of resistance” while appellant “was armed with a deadly weapon or dangerous instrument, to-wit a knife,” as alleged in Count Two, but appellant insists that there was no substantial evidence that defendant’s conduct was “in the course of committing a theft,” a material averment of the second count.
Holly McClelland, eighteen years of age, testified that on October 2, 1982, about 8:00 P.M. at Donut Kastle [also spelled in the transcript as Doughnut] owned by “Samuel Lenore” in Enterprise, the following occurred:
“A. Well, I heard a noise right about the sink and I turned around and I seen him [defendant] standing there with a knife in his hand.
“Q. What type knife?
“A. It was a big like a butcher knife.
“Q. About in your best judgment how large was that knife?
“A. About that big (indicating with hands.)
“Q. Where was the knife on his person? Was it in his hand?
“A. In his hand.
“Q. Did he say anything to you at that point?
“A. Don’t say nothing.
“Q. What if anything did you say to him?
“A. I said, ‘What do you want?’ ‘Money?’ ‘Doughnuts?’ He did not respond.
“Q. What if anything happened then?
“A. Well, he took me into the back room.
“Q. How did he take you to the back room?
“A. At knife point. He led me into the back room.”
The witness further testified that she and defendant, while defendant had the knife in his hand, went out of the place of business into the yard, in some bushes, and during such time the knife disappeared, that she finally pulled loose from defendant and ran back to the Donut Kastle.
Officer William Moore, of the Enterprise Police Department, testified that on October 3, 1982, at 4:15 P.M., he executed a warrant of arrest upon defendant, took him back to the Police Department and there “advised him of Miranda warnings and conducted an interview.” At that time, Officer Moore had a knife with him and a shoe. The witness further testified:
“I asked him, one, was it the knife that he had used. He replied that it was. I asked him did the shoe belong to him and *1119 he replied, yes, it did. I then asked him would he tell me about what happened at the Donut Kastle on the night of the 2nd. He stated to me that he had come walking back from a place in Enterprise known as the Dew Drop Inn, and that while walking back he decided to rob the Donut Kastle on East Park Avenue. He stated that he watched the girl as she was cleaning up and then he went up to her with a butcher knife in his hand. He said he grabbed the girl and put the knife to her and told her that he wanted the money. He stated that she told him there was no money in the place, but that if he wanted any of the other stuff to take it and please not hurt her. James then stated that he decided that he would scare her into telling where the money was so he took her off at knife point. And I asked him if he would have killed her or if he was going to rape her. He stated that he was not, that he merely wanted to scare her into giving the money-
“That concluded the statement that he gave me that day.”
According to Criminal Code, § 13A-8-40(b), the allegation in the indictment that the alleged crime was committed in the “course of committing a theft” embraces, alternatively, an attempt to commit a theft. Grace v. State, Ala.Cr.App., 431 So.2d 1331, 1333 (1982). The language of § 13A-8-40(b) necessitates the conclusion that, according to the evidence, a jury issue was presented as to defendant’s guilt of robbery in the first degree.
II.
Appellant asserts that the failure to require the State to elect between the two counts in the indictment constituted prejudicial error. He quotes from Gunn v. City of Birmingham, Ala.Cr.App., 402 So.2d 1122, 1123-1124, in which the sound proposition is stated, with a citation of previous authorities, “A defendant in this State may not be put to trial on multiple indictments without his express agreement and consent, unless he fails to object [emphasis supplied].” In the cited case, the court correctly applied the principle to “five separate complaints for illegal sales of liquor” in violation of a city ordinance that “took place on five separate dates.” The principle is inapplicable to the instant case in which there was only one indictment. We do not understand the position taken by appellant, “[T]he trial court should havé ordered an election prior to trial.” In further arguing the same issue he says, “The cases are not clear” as to the question, “When should the court strike the extraneous count?” In our opinion, appellant has misconceived the legitimate purpose of the State’s proceeding with the prosecution until the final stages of the evidence under both counts of the indictment, which procedure has been approved consistently in appellate courts of Alabama since Mayo v. State, 30 Ala. 32, 33 (1857), in which it was held:
“Where two distinct felonies are charged in two counts, it is not a matter of legal right pertaining to the accused, that the State should be compelled to elect for which one of the offenses it will prosecute; nor will the court compel such election, where the two counts are joined in good faith, for the purpose of meeting a single offense. It is a practice sanctioned by common custom, and by the law, to charge a felony in different ways, in different counts of the indictment, so as to provide for the different phases which the evidence may present upon the trial; and where such is a bona-fide purpose of the joinder of counts, the court never exercises its power of quashing the indictment, or compelling an election.
[[Image here]]
The same conclusion was reached in Wilcox v. State, Ala.Cr.App., 401 So.2d 789, 792 (1980), and in Ex parte Wilcox, Ala. 401 So.2d 794, 796, with each court citing Mayo v. State, supra, as an authoritative precedent. The joinder of two counts in the same indictment was proper; the denial of defendant’s motion to require an election was correct; the action of the State in withdrawing Count one of the indictment was appropriate, and no error prejudicial to *1120 defendant resulted in connection with the issue now under consideration.
III.
By the third issue raised in the brief of counsel for appellant, he contends that the trial court committed reversible error in failing to allow defendant to proceed pro se and in failing to advise defendant of his Constitutional right “to be heard by himself and counsel, or either ...” as provided by the Constitution of Alabama of 1901, Art. I, § 6. The issue now under consideration is based on the following occurrence on the day the trial occurred and just before the case was called for trial:
“THE COURT [Addressing defendant]: The other day you and I had a conversation over there in the room [evidently referring to the arraignment]. Remember?
“DEFENDANT HINTON: Yes.
“THE COURT: I explained the nature of this particular charge and ask [sic] you how you plead and you plead not guilty, so we set your case for trial today. It is my understanding or do I understand that you are ready to go to trial?
“DEFENDANT HINTON: No, sir.
“THE COURT: Why not?
“DEFENDANT HINTON: I want another lawyer. I explained it to this gentlemen [sic] here.
“THE COURT: Well, Mr. Haigh was appointed to represent you.
“DEFENDANT HINTON: I know it.
“THE COURT: And since you cannot afford to hire your own we can’t have any shopping around and Mr. Haigh is going to represent you and your case is going to be called for trial and your case is going to go to trial this morning the first one out of the chute, and we just can’t have and we don’t permit defendants to shop around and select their own attorney.
“DEFENDANT HINTON: I wasn’t shopping, Judge, but I want to get another lawyer because Mr. Haigh here, he, come telling me three or four different things every time I see him, and I can’t go along with that. I mean I might as well go to trial without a lawyer, you know, is what I am saying.
“THE COURT: No, you are going to have counsel sitting at the table representing you and it is going to be Mr. Haigh.
“DEFENDANT HINTON: Whether I want him or not?
“THE COURT: You have the right to counsel under the Sixth Amendment to the Constitution of the United States. If you cannot afford one one will be assigned to defend you. Mr. Haigh has been assigned. He is competent, he is learned, he is honest, he is diligent, he is zealous for his clients. He has always in the past. He’s going to represent you. We are going to call your case for trial now, because you are in jail, you haven’t made bail and you are entitled to a speedy trial.
“DEFENDANT HINTON: 1“ can’t make bail.
“THE COURT: Well, we have got to try your case.
“DEFENDANT HINTON: Because I have got a parole that stopped me from making bail.
“THE COURT: You have not been denied bail on these charges.
“DEFENDANT HINTON: I said I have got a parole. I can’t get out on bail.
“THE COURT: But that is something else that we haven’t got anything to do with. So, if you will just have a seat there and we are fixing to start.”
Whereupon, a jury was selected and the trial was commenced and concluded with a return of the verdict finding defendant guilty of robbery in the first degree, which resulted in the sentence imposed to imprisonment for life without parole. The transcript concludes as follows:
“So if nothing further, you are remanded back to the custody of the Sheriff. Mr. Haigh as competent as he is and learned in the law as he is will be in touch with us I am sure on some post trial motions within 30 days from this date, and we will have another set to (sic) about that. *1121 That will come up later on. But, we have got to take it one step at a time.
“MR. HAIGH: Your Honor, on behalf of Mr. Hinton he has previously informed me. We would serve notice on the Court at this time he desires to make notice of appeal and would request that the transcript be prepared. That would be a working appeal.
“THE COURT: What we will do, we will write it on this sheet. Notice of appeal given, appeal perfected, free transcript and record will be prepared by the Clerk and Court Reporter, because I assume you are without sufficient funds to pay for it, is that correct?
“DEFENDANT HINTON: Right.
“THE COURT: Okay, it will be done.”
Within thirty days, defendant’s appointed counsel filed a motion for “Acquittal or in the Alternative for a New Trial,” which was overruled by the trial court. From the commencement of the trial of the case until commencement of the execution of the sentence, the transcript shows that the question of the Constitutionality of defendant’s right to defend himself without counsel was never raised.
We have no difficulty in determining the state of the law as to the Constitutional right of a defendant in a criminal case to defend himself without counsel and the Constitutional right of the defendant in a criminal case to be defended by counsel. It has been recently well stated in Clark v. City of Mobile, Ala.Cr.App., 357 So.2d 675, 676-777 (1978) as follows:
“It is undeniable that the State cannot force a lawyer upon a defendant in a criminal case, where the defendant has voluntarily and intelligently decided to proceed without counsel. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562; Beckley v. State, Ala. Crim.App., 333 So.2d 875. However, in order to competently choose self-representation, the defendant should be ‘made aware of the danger and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice made with eyes open.’ Adams v. United States, Ex rel., McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268.”
Although desirable clarity is not shown by the transcript as to the controlling reason for the action of the trial court in not excusing defendant’s appointed attorney as defendant’s attorney in the case and allowing the defendant to proceed without the benefit of counsel in defending himself, we are persuaded that the trial court was not in error in the action taken by it as stated above. Not only was it the duty of the trial court to protect defendant in his right to defend himself without counsel, but it was also the duty of the trial court to be reasonably assured that defendant was aware of his unquestionable right, at his election, to be represented by counsel and his right to defend himself without counsel. Although the transcript does not fully convince us thereof, we are persuaded that the trial court had reason to believe that the defendant was not emphatically and with candor endeavoring to defend himself without counsel. We are influenced to some extent to this persuasion by items in the bench notes of the trial judge, particularly an entry dated February 14, 1983, signed by the trial judge, stating “James Hinton granted right to participate as co-counsel.” It is also to be noted that defendant’s appointed counsel was extraordinarily diligent and resourceful in his efforts to protect defendant against an unjust result, throughout the trial of the case, on the sentence hearing and on the post-conviction motion, as well as on appeal. In further illustration of the efforts of both the trial judge and defendant’s appointed counsel to protect the defendant against any infringement upon his constitutional rights is the following that occurred at the request of defendant’s counsel when the State rested its case:
“(The following occurred in chambers out of the hearing of the jury.)
“THE COURT: The door is shut. Present is defendant Hinton, his counsel and a representative of the State. You have the right to take that witness stand *1122 and testify in your own behalf, you know that?
“DEFENDANT HINTON: (Nods head affirmatively.)
“THE COURT: It is apparent that you have exercised your right to remain silent. You did that because of whatever situation you felt was most appropriate in your behalf, and I just know that is the way it was. I do want to personally tell you that you do have a right to take the stand and you have elected not to. There can [apparently, the word should be ‘can’t’] be any comment by these gentlemen on your exercise of the right to remain silent. If they do they know what is going to happen.
“All the charges by [sic] requested by defendant will be read.
“(At this time the defendant and his counsel returned to the courtroom where-the State attorneys and defense counsel made their respective closing statements to the jury without objection thereto).”
Notwithstanding our inability to determine precisely the course taken by the trial court as to the question under consideration, we are convinced that it passed safely between the Scylla of an infringement of defendant’s right to counsel and the Charybdis of an infraction of his right to defend himself without counsel, and thereby avoided any error prejudicial to defendant.
IV.
Appellant urges that it was error for the trial court to fail to charge the jury that the jury could consider the question of the voluntariness of defendant’s confession in deciding what weight to give the confession. This question, however, was not raised in the trial court. No request for such an instruction was made by defendant. In Andersen v. State, Ala.Cr.App., 418 So.2d 967, 969, we find:
“... This Court has held ‘in the absence of a request, objection, or exception, an alleged error in the trial court’s failure to instruct cannot be raised for the first time on appeal.’ Simms v. State, 386 So.2d 767 (Ala.Cr.App.1980), writ denied, 386 So.2d 770 (Ala.1980). ...”
There was no reversible error in the court’s failure to charge the jury as to the question of the voluntariness of defendant’s confession. ■
V.
An illustration of appellant’s counsel’s dedication and persistence in representing appellant is to be found in the fifth issue presented in appellant’s brief, in which appellant challenges the propriety of closing argument to the jury by counsel for the State, which counsel for appellant has presented to this Court via an amended transcript, which in pertinent part is as follows:
“Now, I’m not going to set up here or stand up here and try and tell you or try and answer every allegation that Mr. Haigh has made about this case. In fact I sat up here through this trial and I watched you and especially just now I see some confused looks on you all’s faces, and we are partly responsible for that, because at the instance of the Grand Jury of Coffee County, Alabama, we have prepared a two-count indictment. The first count charging Mr. Hinton with the offense of kidnapping in the first degree and the second count charging him with robbery in the first degree. “Now, what I would like to do and what I would urge you all to do to simplify this case is when you did all go back to deliberate, forget about kidnapping. Forget about kidnapping and let’s boil this thing down on the elements of robbery in the first degree. That’s what I want you to do.”
With extraordinary fidelity to his client, appellant’s attorney goes to the extent of saying that it “was the intent of the State to surprise and effectively prevent the defendant answering their request to drop one of its [sic] the counts of the indictment to wait until their final closing argument, as is shown in Supplement to the Transcript Pages 1 through 3.” As we have already indicated above as co the second *1123 issue presented by appellant, the State had good and legitimate reason for proceeding under the two-count indictment without an election as to which count should be prosecuted until all evidence had been closed. For this reason and the further reason that no ruling of the court was invoked by defendant as to the argument quoted above during the State’s closing argument to the jury, no error prejudicial to defendant is to be found in the fifth issue in appellant’s brief.
VI.
By the final issue presented in appellant’s brief, his counsel challenges the judgment sentencing defendant to life imprisonment without parole pursuant to the Habitual Felony Offenders Act. At the sentence hearing, three previous felony convictions were shown, two for burglary in Pennsylvania and one for murder in the first degree in March 1964 in the Circuit Court of Pickens County, Alabama. Appellant’s attorney argues that “the Pennsylvania cases should not have been admitted against Defendant Hinton” for the reason that the evidence of such convictions does not affirmatively show that defendant had counsel at the time, and further that the convictions in each case could have been based on a plea of nolo contendere, which, according to appellant, is legally recognized in Pennsylvania. We do not agree with the challenge of the convictions in Pennsylvania, for the reason that the evidence shows that there was a plea of guilty in each case, and it appears reasonably certain, though not absolutely certain, that defendant had counsel in each case. As stated by the trial court at the conclusion of the sentence hearing:
“Mr. Haigh, on behalf of Mr. Hinton’s objections to Pennsylvania convictions the objection is going to be overruled, because the records show that on the 26th day of September he had counsel appointed and we just presume that that was the situation there.”
There was some evidence at the sentence hearing of a conviction of defendant in the Pickens County Circuit Court for grand larceny, in addition to his conviction for murder in the first degree. At the sentence hearing, defendant’s counsel challenged the sufficiency of the evidence as to the.conviction for grand larceny, and the District Attorney replied:
“May it please the Court, we are submitting that grand larceny conviction just for the Court’s information. We are relying on the certified copies of the two burglary convictions in Pennsylvania and the one murder conviction in Pickens County, Alabama, as the three previous felony convictions.”
Near the conclusion of the sentence hearing, the court stated:
“On this Pickens County case wherein the offense of murder, the records show he had two counsel or three practicing before the Pickens County Bar representing him. So the objections will be overruled to that.
“On this Pickens County grand larceny, just for housekeeping purposes we are going to sustain objection to that.”
Although the further fact was not brought to the attention of the trial court by either of the parties and has not been brought to our attention other than by the reported case of James Earl Hinton v. State, 280 Ala. 48, 189 So.2d 849 (Sept. 1, 1966), the judgment of conviction and sentence to death for murder in the first degree of the Pickens County Circuit Court was reversed and the cause remanded for a new trial. We believe that such case is the same case as the one relied upon by the prosecution and the trial court as one of the three previous felony convictions necessary to support the sentence imposed upon defendant. Irrespective of the ultimate outcome of that case after its reversal, the judgment of conviction therein in March 1964 was incorrectly used as a basis for enhanced punishment under the Habitual Felony Offenders Act, Code of Alabama § 13A-5-9.
“It would seem to be an inescapable conclusion that where a conviction of the trial court has been reversed or dis *1124 missed in the appellate court, there can be no valid assertion of a prior conviction with respect to the reversed judgment.”
5 A.L.R.2d, Annot. § 6, p. 1097.
It follows that, although the judgment of conviction should be affirmed, the cause should be remanded with directions that the trial court conduct another sentence hearing, with notice to the parties, and resentence defendant, and make due return, with notice to the parties, to this order of remandment. Either party aggrieved thereby will have twenty-eight days within which to file a brief, and the opposing party fourteen days thereafter to file a reply brief.
The foregoing opinion was prepared by Retired Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
REMANDED WITH DIRECTIONS.
All the Judges concur.
ON RETURN TO REMAND
CLARK, Retired Circuit Judge.
The Return to Remand discloses that the trial court has fully complied with our directions in remanding this cause for the trial court to conduct another sentence hearing, which was concluded on August 6, 1984, with the appellant and attorneys for the respective parties present, at which time the trial court announced judgment of sentence of “imprisonment for life without parole.” Within less than twenty-eight days thereafter, appellant’s counsel dispatched a brief with copy to opposing counsel challenging the sentence. We have received no brief from appellee’s counsel.
By his challenge of the sentence to life imprisonment without parole, appellant does not question either of the two previous felony convictions in Erie County, Pennsylvania, but he contends that the trial court erroneously took into consideration and utilized a felony conviction in Pickens County, Alabama, as a basis for determining that defendant had had three previous felony convictions, which would mandate that the sentence be to life imprisonment without parole, as prescribed by a provision of the Habitual Felony Offenders Act, as codified in § 13A-5-9(c)(3).
The transcript discloses that said previous felony conviction in Pickens County, Alabama, was in the same case, but was not the same conviction, as the Pickens County murder case and conviction that were considered by us on original submission, as shown by the following part of the transcript on the second sentence hearing:
“THE COURT: On the former sentencing hearing you relied upon a conviction which was reversed and this is a separate and distinct conviction subsequent to that?
“MR. FOLMAR [District Attorney]: That is correct.”
We are of the opinion that the State was not entitled, on remandment of this cause for another sentence hearing, to add a previous felony conviction to those considered on the original sentencing hearing, even though the one added was in the same case as one of the convictions erroneously considered effectual on the original hearing. To hold otherwise would enable the prosecution to thwart the spirit at least of Rule 6(b)(3) (ii), Rules of Criminal Procedure, which states:
“At a reasonable time prior to the [sentence] hearing the defendant shall be given notice of the previous conviction or convictions upon which the state intends to proceed.”
It follows that the trial court could not have validly sentenced the defendant to punishment greater than life imprisonment, and the sentence should now be modified by deleting the words “without parole.”
REMANDED FOR PROPER SENTENCING.
All the Judges concur.